GEORGE D. McDANIEL *et al.*, Appellants, v. THE SPRINGFIELD WATERWORKS COMPANY, Respondent.

### St. Louis Court of Appeals, February 16, 1892.

1. **Municipal Corporations:** RIGHT OF WATERWORKS COMPANY TO MAKE EXTRA CHARGE FOR WASTE OF WATER BY CONSUMER. A municipal ordinance granted to a company the right to supply water to citizens, and authorized the company "to make all needful rules and regulations for shutting off water for non-payment of water rent by private consumers, or for waste or any wrongful use of water." It also established a schedule of prices for water used for horses and washing carriages at livery stables, and a maximum price where water was paid for by meter measure. *Held*, that the company was warranted in making a regulation, pursuant to which it ascertained by meter measurement the water used at a livery stable, and charged at said schedule rate

for the amount of water reasonably necessary for the horses kept and carriages washed at said stable, and at said maximum rate for the water wasted there, that is, for the amount there in excess of what was reasonable for said purposes.

2. ———— : RIGHT OF WATERWORKS COMPANY TO SHUT OFF WATER FROM PREMISES OF CONSUMER. *Held*, further, that the company, in case of the non-payment of the extra charge, was not restricted to an action at law for the recovery of that charge, but had the right to shut off the supply of water to the consumer.

3. Injunction : REMEDY OF CONSUMER IN CASE OF EXCESSIVE CHARGE BY WATERWORKS COMPANY. One who seeks to restrain by injunction any act for the collection of money must first tender what is justly due. *Held*, under this rule, that where the waterworks company makes an excessive charge for water thus wasted, and is about to shut off the supply of water to the consumer owing to the non-payment of this charge, the consumer must first determine and make an approximate tender of the amount justly due the company before he can successfully invoke equitable protection by injunction.

*Appeal from the Greene Circuit Court.*

AFFIRMED.

*Barbour & Stillwagen*, for appellants.

*Benj. U. Massey*, for respondent.

THOMPSON, J.—The plaintiffs are partners, engaged in keeping a livery stable in the city of Springfield in this state. The defendant is a corporation engaged, as the assignee of a franchise granted by the city of Springfield to one Perkins, in supplying the inhabitants of that city with water. This is a suit in equity for an injunction to restrain the defendants from cutting off the supply of water from the livery stable of the plaintiffs. The court granted a provisional injunction, but dissolved it on final hearing, and the plaintiffs prosecute this appeal.

The franchise was granted to Perkins by the city in the form of an ordinance, the provisions of which were accepted by him. This ordinance, among other

provisions, contains the following: "And hereby is granted to the said Perkins and assigns the right to make all needful rules and regulations for the protection of said waterworks and their operation, the tapping of mains, proper size of service pipe, and appliances to be used in and upon all outside appliances connected with the said waterworks, in supplying the consumers with water, and for shutting off water for non-payment of water rent by private consumers, or for waste or any wrongful use of water."

The ordinance also confers upon Perkins, or his assigns, the power to collect, as their annual rate for the use of water, a tariff of prices equal to, but not exceeding, the annexed list as follows: * * * "Livery horses, including all of a similar kind, and washing carriages, $2; each additional stall, $1.50." In pursuance of the power thus granted, the defendant corporation established a series of regulations prohibiting among other things the waste of water, and providing that a violation of the same would be visited with a loss of the water supply, etc. In one of these regulations the company reserved the power to ascertain by meters the quantity of water used in any case, and provided that a meter should be affixed, whenever, in the judgment of the company, it should be deemed expedient.

The defendants, having satisfied themselves that the plaintiffs were wasting the water supplied to them at their livery stable, affixed a water meter to the pipe which supplied the stable, and made out bills against the plaintiffs for the water supplied to their stable, as shown by the meter measurement, in excess of the amount of twenty gallons per horse per day, which amount included also what was deemed necessary for the plaintiffs to expend in the washing of their carriages and buggies. By these bills the defendants demand of the plaintiffs about $25 or $30 a month, roughly speaking, in excess of what the plaintiffs would

have to pay under the rate of charges fixed by the ordinance as above quoted, and about five times the amount per month which they would be required to pay under that ordinance. The theory of the defendant is that the plaintiffs have a right, at the rate prescribed by the ordinance, to the use of a reasonable amount of water for watering their horses and washing their vehicles and harnesses, and that the defendants have a right to charge them at meter measurement for any excess of water used by them over such reasonable amount, as being unreasonably wasted in their business. The defendants do not claim the right arbitrarily to fix the amount of water which the plaintiffs shall use in their business, and to charge them for any excess over the amount so fixed; but concede that they are bound to fix a limit sufficiently liberal towards the plaintiffs to be vindicated in a court of justice.

The plaintiffs, on the other hand, deny the right of the defendants to subject their livery stable to a meter measurement of the water used, and deny their right to place any limit whatever upon the amount of water which they may use; but take the position that, if they are guilty of wasting water supplied to them by defendants, the remedy of the defendants must be in a common-law action for damages for such waste, and that the defendants cannot take the remedy into their own hands by shutting off the water, or by charging the plaintiffs for such amount as the defendants may deem to be waste, under the pain of shutting off their supply of water if the plaintiffs do not pay such extra charge.

The defendants gave no evidence whatever, attempting to justify the limit which they fix at twenty gallons per day per horse, including the washing of vehicles. But the senior partner of the plaintiffs, testifying as a witness in behalf of the plaintiffs, gave evidence which helped the defendants out in this particular, which was to the effect that the average amount of water which a horse will drink in summer is about sixteen gallons, and

that the average is about half that in winter; also
that the average number of vehicles washed by the plain-
tiffs is about fifteen per day, and that the average
amount required to wash each vehicle is twenty gallons.
The other evidence in the case adduced by the opposing
parties, stated most favorably for the plaintiffs, shows
that there has been on the part of the plaintiffs a gross
waste of the water supplied to them in their livery
stable. The evidence shows that the manner in which
buggies are washed by the plaintiffs, and the manner in
which they are usually washed by livery-stable keepers
in Springfield, is to prop up the axle so that the
wheel will revolve, and then turn a hose upon the wheel,
the water running at about half pressure without a
nozzle, so as to strike the wheel with a weak current.
After it is wet the washer applies a sponge, and by the
aid of this jet of water washes the wheel off; after
which it is rinsed, dried, chamoised and oiled. The
plaintiff's evidence tends to show that it takes one man
about seven hours each day to wash all the buggies
which have to be washed in the plaintiffs' stable. It
also shows that it is necessary to keep the hose running
less than half of this time. It also shows that the hose,
running at the pressure used when washing buggies
discharges six gallons of water per minute. If we
apply this liberal estimate to the plaintiffs' stable during
the month of October, 1890, when they had therein fifty-
one horses, and allow to each horse sixteen gallons of
water per day for drinking purposes, we shall find the
amount of water necessary for the horses to be eight
hundred and sixteen gallons per day; the amount nec-
essary for washing the vehicles twelve hundred and
sixty gallons per day; the total amount necessary for
daily consumption two thousand and seventy-six
gallons; making a total amount necessary to be con-
sumed during the thirty-one days of that month, of
sixty-four thousand and three hundred and eighty-six
gallons. But the amount which was consumed, as

registered by the defendant's meter, was one hundred and forty-four thousand and eighty-two gallons. The evidence totally fails to account for this enormous discrepancy. All the evidence tends to show that, while the water meters used by the defendant sometimes get out of order, yet that when out of order they merely fail to register the water which passes through them ; and that they never register more water than does pass through them. To this there is no opposing evidence.

One witness, a livery-stable keeper in Springfield, who had in his stable about thirty horses, testified on behalf of the defendant that, since they had put in a meter to measure the water supplied to his stable, and had thereby increased his bills, he had been in the habit of washing his buggies by revolving the wheels in a trough of water, by which means he had considerably reduced his bills. His testimony tends to show that, this mode of washing buggies is much more economical in regard to the use of water, and is entirely practicable. On the other hand several livery-stable keepers, testifying on behalf of the plaintiffs, expressed the opinion that such a mode of washing would not be practicable, basing their opinion on the ground that the water in the trough would become full of sand and gravel, which would be picked up by the sponge and would scratch the paint of the buggy.

In the state of the pleadings and the evidence we are, on the whole, justified in assuming that there has been on the part of the plaintiffs a gross waste of the water supplied to them by the defendant which the plaintiffs have wholly failed to justify or even to account for. This certainly justifies the defendant in taking measures to prevent the waste. The most reasonable measure which they could take seems to have been to put a water meter in the pipe supplying the plaintiffs' stable, whereby to measure the amount of water consumed by them, and to charge them for so much of their consumption as should be unreasonable

at the price of twenty-five cents per one thousand gallons, the same being the maximum price allowed by the ordinance where the water is charged for by the meter measurement. This is what, according to their contention, they have attempted to do, and what they intend to do unless restrained by an injunction. But the evidence satisfies us that, in carrying out this purpose, the defendants have placed the reasonable amount to be allowed to the plaintiffs at too low a limit. In the absence of any very definite evidence as to what is a reasonable amount for them to use, we are justified in taking the testimony of the senior partner of the plaintiff firm. Applying that testimony to the month of October, 1890, the first month in which the defendants endeavored to collect meter rates for the excess shown by their meter measurement, we find that the amount per day necessary for the fifty-one horses kept by the plaintiffs during that month, at sixteen gallons per horse, was eight hundred and sixteen gallons; that the amount per day necessary for the washing of the average of fifteen vehicles per day, shown to be washed by the testimony of the plaintiffs' senior partner, for that month at twenty gallons per vehicle is three hundred gallons per day,—making a total of eleven hundred and sixteen gallons per day. If we allow a small quantity for the washing of harnesses, shown to be about a tubful per day, it will appear that on the basis of the plaintiffs' own evidence the amount necessary to be consumed by them was, during the month, less than twenty-two gallons per horse per day. Taking that as the fair average, which the testimony of the senior partner of the plaintiffs authorizes us to do, and allowing for a certain amount of waste which may be supposed to be unavoidable, and hence not unreasonable, we conclude that to allow the plaintiffs twenty-five gallons per horse per day is a very liberal allowance, and that beyond that allowance the defendants on the evidence in this record would be entitled to collect, at the rate

of twenty-five cents per one thousand gallons, for all the water consumed by the plaintiffs as shown by meter measurement.

We do not take the view, pressed upon us by counsel for the plaintiffs, that, if the plaintiffs do not see fit to pay this excessive charge, the only remedy of the defendants is an action at law to recover the same. The slightest reflection will show that a water company could not do business, if its only remedy for the waste of its water by its consumers consisted in actions at law against them severally. This would lead to an almost infinity of actions to collect very small bills against scattered consumers, many of them mere renters and insolvent. The ordinance under which the defendants are supplying water to the inhabitants of Springfield proceeds upon this ground, in so far as it gives them, in language already quoted, the right to shut off the supply of such consumers in case of waste.

Our judgment upon the evidence, then, is that the defendants were justified in putting in the meter and in taking means to measure the waste of water which was being made by the plaintiffs, and in charging and collecting at the maximum rate allowed by the ordinance, for such waste. But we also think that, in estimating the amount which they might reasonably consume at the rate of $2 per horse, fixed by the ordinance, the water company made their estimate unreasonably low. We are of opinion that, taking all seasons of the year together, the plaintiffs ought, on the basis of their own evidence, allowing for a reasonable and unavoidable amount of waste, to be allowed the amount of twenty-five gallons per day per horse.

If the plaintiffs had tendered to the defendants what the plaintiffs' own evidence shows was due to them, and the defendants had refused to receive it, the court, upon such showing, would have been bound to restrain the defendants from shutting off the water for non-payment of their bills. But the plaintiffs failed

to do so. They confined their tender strictly to the amount fixed by the ordinance, without making any allowance whatever for the waste of water conceded by their own evidence. One, who seeks to restrain by injunction any act for the collection of money, must first tender what is justly due. *Overall v. Ruenzi*, 67 Mo. 203. The court, therefore, committed no error in dismissing the bill.

In passing on the plaintiffs' evidence we do not wish to intimate that they are concluded, in another proceeding, by the figures testified to by their senior partner. They must, however, determine what is justly due the defendants, and make an approximate tender before they can successfully invoke equitable protection.

The judgment is affirmed. All the judges concur.