Summers, C. J.
The manufacturing company brought this action to enjoin the city and its board of public service from shutting off from plaintiffs factory the supply of water from the .city water-works. - The plaintiff in its petition filed December 3, 1907, avers that it is, and has been, using at its factory water supplied by the city, and that it has no other source or means of supply for a portion of its factory, and that if the city shuts off this supply it will stop a large portion of plaintiff’s manufacturing and cause it irreparable injury; that plaintiff has always paid the amount charged against it, and that it is now willing to pay the city for the. water consumed; that the city on the books of its water-works has charged against the plaintiff $610.13 for six months’ water rental, and has given plaintiff notice that unless the same is paid by December 5, the city will shut off the supply; that the charge is exorbitant, that the plaintiff has not during said time used two hundred dollars worth of water and that it has tendered to the city two hundred dollars which it refuses, and that it threatens to and will, unless enjoined, shut off the water.
The city in its answer admits that it has this amount charged on its books against the plaintiff and that it will, unless enjoined, cut off the supply of water. It then sets out a scale of meter rates established by the city, avers that the water supplied to the plaintiff during the period in controversy was measured by meters installed in the manufacturing plant of the plaintiff, and that the amount charged was due as determined by the quantity registered by the meters and at the estab *218 lished rates, and that the rates are reasonable. It is also averred that the following rule,- adopted by its board of public service, relating to the waterworks, was in force:
■ “Section 20. If any party shall refuse or neglect to pay the water rent when due, or permits any waste of water not authorized by the rules and regulations of the board of public service, the water shall be turned off and not turned on again until all back rent and damages shall be paid, and the further sum of $1.00 for turning on and off the water.”
The reply of plaintiff denies that it consumed the quantity of water stated in the answer and avers that if the meters registered that quantity then they were out of order and inaccurate, and that if the meters were not inaccurate that they were inaccurately read.
The court of common pleas dismissed the petition and the plaintiff appealed to the circuit court. The circuit court, among other things, found that the plaintiff is solvent and fully able to pay the charge, that it had paid' all previous charges, and that after the bill in controversy had been presented it bad tendered to the city the sum of two hundred dollars, “that there is a dispute over said bill for water between said plaintiff and said defendants, and that said dispute is not captious and dilatory but is maintained by,plaintiff in good faith; that the defendants have not resorted to an action at law to determine the amount of said bill for water, nor has the amount of said bill ever been adjudged in any civil action,” and that if the water was shut off it would cause irreparable injury, and it *219 enjoined the city from shutting off or interfering with the water supplied to the plaintiff until such time as the amount due is determined by á court, and then provided • that if the amount so found is not then paid, the city may turn off the water under its said rule. Error is prosecuted in this court.
Whether the circuit court enjoined the city from shutting off the water on the ground that its rule respecting that matter is unreasonable, or on the ground that under the circumstances it was inequitable to enforce it, does not appear from its judgment. The implication is that it did not find the rule unreasonable. In that event the court ought not to have sent the city out of court without determining the amount due it from the plaintiff. It should have enjoined the cutting off of the supply of water pending the action only upon the plaintiff giving bond to pay the amount ascertained to be due, and should have ascertained in that action the amount due.
Section 7, Municipal Code, authorizes municipal corporations to provide for a supply of water by the construction of water-works and to collect money for water supplied. Section 1536-520 makes it the duty of the officers in charge of the water-works to furnish supplies of water and collect water rents. Section 1536-521 authorizes them to make such by-laws and regulations as they may deem necessary for the safe, economic and efficient management and protection of the water-works. Section 1536-522 authorizes them to assess and collect a water rent, “in such manner as it deems most equitable upon all tenements and *220 premises supplied with water, and where more than One tenant or water taker is supplied with water from one hydrant, or off the same pipe, and when the assessments therefor shall not be paid when due, the board shall look directly to the owner of the property for the entire rent, or so much thereof as remains unpaid for water furnished said premises, to be collected in the same manner as other city taxes.” The water rent or charges for water supplied are here referred to as taxes, and it is provided that they may be assessed upon tenements and premises supplied with water and the 'statute seems to contemplate an assessment upon the premises supplied with water and not a personal charge for water supplied. These statutes are in the form they were when the matter was new and comparatively unimportant. Since then cities have multiplied and the number of their inhabitants increased many times, and this important public service is performed largely under rules and regulations adopted by the officials charged with its management. In Hennessey v. Volkening, 30 Abbott’s New Cases, 100, it is held “that water rents in New York City are chargeable only upon the property actually supplied with water, and arc not -a tax or assessment, but merely a charge for water furnished.” And in Silkman v. The Board of Water Commissioners of the City of Yonkers, 152 N. Y., 327, it is held: “Rents charged by a public corporation for water actually used by private consumers are not in any just sense taxes so that persons against whom they are charged are entitled to notice and an opportunity to be heard before they are established.” See *221 also Merrimack River Savings Bank v. City of Lowell, 152 Mass., 556. We think the city may, under its authority to supply water and collect for the water supplied, establish rules and regulations for supplying water, and may establish rates and enforce its rules and regulations and the collection of its charges, and we are not in the present case, called upon to determine its power with respect to assessing rents upon the premises supplied with water. Rules, such as the one in controversy, with respect to water and gas are usual and reasonable, but the decisions are not in accord as to the reasonableness of the charge for turning on and off the water or gas, nor as to the right to enforce the rule where the charge is disputed. Section 3559, Revised Statutes, provides : “If any person so supplied with gas neglect or refuse to pay the amount due for the same, or for the rent of the meter, or other articles hired by him of the company, the company may stop the gas from entering the premises of such person.” Abbott on Municipal Corporations, Section 468, says: “Although water rentals or assessments are not regarded as-taxes, being simply the purchase price of a commodity sold by a public corporation, yet, so far as their collection is concerned, they are generally treated as taxes. The customary remedy given or provided for the enforcement of the payment of water rentals is the right to cut off the water supply from those who may be in arrears after a designated time.”
The statutes and decisions in other states cannot throw much light upon our own statute, but they may be helpful in determining the question of *222 the reasonableness of the rule under consideration. In Shiras v. Ewing, 48 Kans., 170, it is held that the water compan}' may make reasonable rules for the government of its customers in the use of its water supply, and enforce such rules by shutting off the customer’s water as a penalty for the violation thereof, and that in such cases the company will not be put to an action for damages for infractions or violations of its rules. In the opinion it is said: “The plant of the water company was constructed to supply the city of Ottawa and the inhabitants thereof with water. It necessarily has a large number of patrons. We do not think it reasonable or practicable to hold that for all the Adolations of the use, by its patrons, of the water supplied under its contracts therewith, the company shall be put to an action for damages. To so- hold would be to depriA^e the company of any remedy, and leave it. subject to the whim of each individual patron, so far as the use of the Avater supply is concerned since it would be wholly impracticable for the company to bring an action for damages whenever the rules, or any of them which are a part of the contract, were violated by its patrons.” In McDaniel v. The Springfield Water-works Co., 48 Mo. App., 273, 280, Thompson, J., says: “We do not take the Ariew, pressed upon us by counsel for the plaintiffs, that, if the plaintiffs do not see fit. to pay this excessive charge, the only remedy of the defendants is an action at laiv to recover the same. The slightest reflection will show fhat a water company could' not do business, if its only remedy for the waste of its water ny its consumers consisted in actions *223 at law against them severally. This would lead to an almost infinity of actions to collect very small bills against scattered consumers, many of them mere renters and insolvent.” In Sheward v. The Citizens Water Co., 90 Cal., 635, it is held that a water company has a right to shut off the water from its consumer when the consumer refuses, to pay for the water supplied. In McEntee v. Kingston Water Co., 165 N. Y., 27, it is held: “Where a company under contract with a citizen to supply him with water fails to do so and the latter refuses to pay a bill rendered, the former will be enjoined pendente lite from cutting off the customer from its water system, as the rights of the parties must be determined by the court.” We do not think the conclusion reached in that case is in conflict with the conclusion reached in the present case. And in the opinion Bartlett, J., says (32) : “The principles coptr oiling this case have frequently been decided in the lower courts, and the substance of these decisions is that if the company supplying water, gas, telegraphic information or any other commodity has fully performed its contract and the customer' refuses to pay his bills, it is entitled to cut off the supply of the latter under its rules and regulations.
“On the other hand, if the company is in default of its contract, express or implied, it would shock the sense of justice if it were to sit as a judge in its own case by cutting off the customer from his contract privilege. In such a situation the rights of the parties must be determined b.y the courts.”
Turner v. Revere Water Co., 171 Mass., 329, was a suit to compel the water company to supply *224 the plaintiff with water, and to restrain it from preventing him from securing a suitable supply thereof. In the superior court a decree had been entered restraining the water company from refusing or neglecting to supply the plaintiff with a suitable supply of water so long as he continued to pay the regular water rates, and complied with all other reasonable and usual regulations of the company in the future, except those relating to the payment of the water rates remaining unpaid of previous owners or tenants. The decree was affirmed. In that case the plaintiff rented a dwelling-house, the owner of which was indebted to the company for water previously supplied and the court held that, in the absence of legislation, the company could not by its regulation impose a lien upon land, and it was upon that ground that the rule was held unreasonable. Quite a number of cases are referred to and discussed in the opinion, and it is for that reason referred to, and it is followed in Burke v. City of Water Valley, 87 Miss., 732.
In The People, ex rel., v. The Manhattan Gas Light Co., 45 Barb., 136, a mandamus was refused to compel the gas company to furnish gas to a person who was insolvent and against whom the company had a judgment for gas furnished at another place in the city. In McGregor v. Case, 80 Minn., 214, the plaintiff sued to enjoin the officials charged with the management o'f the water-works of the city of Duluth from cutting off the supply of water to a building in that city which the}'- were about to do because of the refusal to pay the sum of $8.77, which the plaintiff claimed *225 was excessive. It is there said: “It may be admitted that in a controversy over the rate charged for water supply, where there is but one source of obtaining the same in a city, and a cut-off is threatened, an injunction may, upon proper showing, be had, to restrain the illegal duress to collect the improper charges,” and the court refused to hold that the trial court had abused its discretion in refusing the temporary injunction, saying: “In view of the small amount involved, the large interests of the city in operating its water system, the difficulties that might follow if it should transpire that the controversy were ill-advised or unfounded, in a suit to recover the small overcharge, we cannot say that there was an abuse of discretion by the learned trial court in denying the temporary writ.”
In The City of Atlanta v. Burton, 90 Ga., 486, it is held that that city, under its charter, might make the amount due for water supplied a charge on the property supplied \$ith it, and that it might enforce payment by a threat to cut off the supply, and that the amount so paid could not be recovered back on the ground that it was arrears of rent due from a former tenant and that it was paid under, duress. To the same effect is Girard Life Insurance Co. v. City of Philadelphia, 88 Pa. St., 393.
In Sheward v. The Citizens’ Water Co., 90 Cal., 635, an injunction was refused where the plaintiff refused to pay meter rates and tendered schedule rates for water supplied to his residence, the court holding that a water company has a right to shut *226 off the water from its consumer when he refuses to pay for the water supplied.
In Brass v. Rathbone, 8 App. Div. N. Y., 78, it is held that, “Courts of equity will not sustain an action to restrain the collection of a water tax except under circumstances of great necessity and to prevent irreparable damages.”
On the other hand, it is held, in some cases, that a city cannot enforce the payment of old, overdue and disputed bills by shutting off the supply of water. In Wood v. The City of Auburn, 87 Me., 287, it is held: “The water taker may prevent such action by injunction in equity; nor can the court in such proceeding be required to investigate and determine the merits of the unpaid and disputed installment. The water company must resort to the court, if it would enforce its claim.” In the opinion it is said by Emery, J. (292): “The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer once taken on to the system, becomes dependent on that system for a prime necessity of business, comfort, health and even life. He must have the pure water daily and hourly. To suddenly deprive him of this water, in order to force him to pay an old bill claimed to be unjust, puts him at an enormous disadvantage. He cannot wait for the water. He must surrender and swallow his choking sense of injustice. Such a power in a water company or municipality places the consumer at its mercy. It can always claim that some old bill is unpaid. The receipt may have been lost, the collector may have embezzled the money; yet the consumer must pay it again *227 and perhaps still again. He cannot resist lest he lose the water.
“It is said, however, that the consumer can apply to the courts to recover back any sum he is thus compelled to pay, if it was not justly due from him; or, if he can show affirmatively that it is not a just claim against him, he can by judicial process restrain the company or municipality from shutting off the -water. To oblige a person to follow such a course would be a violation of the fundamental juristic principle of procedure. That principle is, that the claimant, not the defendant, shall resort to judicial process — that he who asserts something to be due him, not he who denies a debt, shall have the burden of judicial action and proof. It is only in the case of dues to the state that this principle is suspended.”
In Crumley v. Watauga Water Co., 99 Tenn., 420, a suit to recover damages for refusing to furnish water, it was held that the water company could not justify its refusal by the fact of his failure to pay an old bill. It is said in the opinion: “Upon tender of the regular rates, he was entitled to the water like other persons, and without reference to his past due obligation.”
In Panton v. Duluth Gas & Water Co., 50 Minn., 175, it was held that an excessive charge for water paid under protest to prevent the company from shutting off the supply, was paid under-duress and that an action might be maintained to recover back the excess paid.
In American Water-works Co. v. State of' Nebraska, 46 Neb., 194, it is held that such a corporation is a quasi public corporation and that. *228 it is its ‘duty to furnish water to all the inhabitants of the municipal corporation upon the same terms. That it has a right to adopt reasonable rules and to decline to furnish water to any inhabitant who refuses to comply with such reasonable rules. It held a rule, reasonable that required water rents to be paid in advance and the water to be turned off if the rental was not paid within thirty days after it fell due, but held that part of the rule unreasonable that required the payment of one dollar for turning water off and on.
In Shepard v. The Milwaukee Gas Light Co., 6 Wis., 539, it is held that the company is bound to furnish gas to a citizen upon his compliance with such reasonable terms as the company may rightfully impose, and that a rule of the company allowing the company to demand security for the gas consumed or a deposit of money to secure the pa)mient thereof, is just and necessary to guard against loss. It is said: “As the delivery of the gas is necessarily its consumption, and as the amount delivered is ascertained by the amount consumed, it would seem to be just and right that the company should not be compelled to furnish it without reasonable security for payment, in convenient amounts and at proper periods.” In Crumley v. Watauga Wafer Co., 99 Tenn., 420, already cited, it is held that such a company is a quasi public corporation and must, supply water to all upon the same terms. Smith v. Gold & Stock Telegraph Co., 42 Hun, 454, was a suit to enjoin the removal of a stock tiqker and it was there held, “That the defendant, being engaged in a •business , public in its nature, it must serve the *229 public impartially and render equal service. to all those who complied with such reasonable regulations as might be prescribed by it.”
Edwards v. Milledgeville Water Co., 116 Ga., 201, was a suit to enjoin the water company from disconnecting its pipes in violation of a contract between the consumer and the company. It is said in the opinion by Fish, J. (205): “The plaintiff is without an adequate remedy at law. A court of law could neither prevent the defendant from depriving him of the use of the water, nor restore to him such use after he had been once deprived of it; and the damages which he would sustain in the future, during the long period covered by the contract, by being deprived of the use of a plentiful supply of pure water flowing through pipes upon his premises, and easily and conveniently accessible at all times for the varied necessities and even the luxuries of a household, would be’ very difficult to ascertain, and could not with any certainty, be estimated. Even if the plaintiff could, by erecting and maintaining a private system of water-works, supply his ' residence and premises with water in the same manner and to the same extent that the defendant now does under its contract with him, the damages which the plaintiff would sustain by being deprived of the use of the water, as now supplied to him, during the period of time required for him to complete his own water plant, would be practically impossible of ascertainment with any degree of certainty, to say nothing of the necessity, in order to arrive at the amount of his damages, of estimating the cost of constructing, keeping in repair *230 ' and operating, from year to year,, such private works.” Sickles v. The Manhattan Gas Light Co., 64 How. (N. Y.), 33, was a suit by General .Sickles to restrain the defendant, from removing the meter and cutting off the supply of gas from his residence in the city of New York. He averred that an improper bill had been presented to him, covering- a period for a large portion of which he had been absent in Europe, his residence closed and the gas never lighted. lie averred that he offered to pay for the gas consumed, but that the company refused to accept and threatened to remove the meter and cut off his supply of gas. He asked, in his complaint, that the amount due the company be ascertained and the company be directed to accept the sum so ascertained, and restrained from removing' the meter. In the opinion by Lawrence, J., it is said: (40) “This evidence tends strongly to show that gas meters are not infallible. As I have before observed, I do not understand that the gas company is vested by statute with the power of positively determining as to the amount of the rent or remuneration due to it. I am, therefore, of the opinion that when a dispute arises between the company and the consumer, the latter is entitled to have his rights investigated by the court. In this case I am free to say that the preponderance of the evidence on the affidavits seems' to me to be with the plaintiff and as he expresses himself to be ready and willing to pay the amount actualfy due from him. I am inclined to continue the preliminary injunction until the cause can be tried. On the trial the amount which is due from him to the company *231 can be ascertained and adjusted. * * * This seems to me to be a case in which, if the. plaintiff is right, it cannot be justly claimed that he can be fully compensated by an action for damages. * * * As I am desirous of fully protecting the rights of the company in case it should be eventually determined that the plaintiff is not entitled to an injunction I will require the plaintiff to increase the security given upon obtaining the preliminary prder if the defendant establishes that such security is not adequate to satisfy any damages which it may sustain by reason of the granting of the injunction.”
It seems to us that in this last case the proper practice was followed. In the territory the city undertakes to furnish a supply of water it is its duty to supply all of. its inhabitants without discrimination, at the same price, subject to the same rules and regulations and under the same or similar conditions. It is not a matter of bargain and sale, or of express contract. In its inception a schedule of rates was established, the sum to be paid could be determined in advance of the service and it was not unusual to exact it. But now meters have come into use, and when the quantity consumed is to be ascertained by that means the sum to be paid cannot be determined in advance and the door to contention is opened. It is like a sale on credit. The water is supplied upon faith that the consumer will pay at the meter rates for the quantity consumed as indicated by the meter, and there is an implied promise, by the consumer to pay the sum so determined. This is upon the-assumption that the meter is accurate, but the *232 presumption is that it is, and that the charge is correct. The consumer may dispute the charge and refuse to pay it, but if he does he ought not to be permitted to require the city to continue the service. It is just as reasonable that the city should determine the amount due as that the consumer should, perhaps more, as the determination for the city is by officials without personal interest. If the charge is a lien upon the premises of the consumer and the city undertakes to collect in the manner taxes or assessments are collected, the consumer 'would have to apply to the courts for relief. Of what use are rules and regulations if the city can enforce them only through the courts? It has been held that the consumer may pay under protest and recover anv excess, or that he may sue for damages; but' it has been also held' that these remedies are inadequate and that he may, therefore, seek equitable relief. If he does he ought to do equity and accompany his prayer for an injunction against the cutting off of his supply with an offer to pay the sum the court may ascertain to be due. If he takes the matter into court, why should it also be necessary for the city to do so? The code of civil procedure has supplanted actions a.t law and suits in equity with a civil action in which the remedies of both may be applied. The circuit court ought only to have enjoined until the amount due could be ascertained and it should have been ascertained in that action, and the costs assessed against the party at fault.
Van Nest Land and Improvement Co. v. New York and Westchester Water Co., 7 App. Div., 295, was a suit to enjoin the defendant from *233 cutting off the supply of water in violation of a contract between the parties. In the opinion by Ingraham.; J. (296), it is said: “The plaintiff alleges that it has tendered the amount actually due, and the sole question between the parties is as to the amount due under the contract. No doubt is presented as to the responsibility of either of the parties, the plaintiff expressly offering in the complaint to pay the amount that the court should find due to the defendant. It further appears that it will cause the plaintiff great injury if the water supply is cut off. Upon this state of facts the court below enjoined the defendant from cutting off the water during the pending of this action. * * * It is manifestly difficult to determine the question as to how much allowance should be made to the plaintiff under the contract, because of a failure by the defendant to comply with the contract on its part. That can only be done upon a more, extended examination than could be had upon a motion of this character where no cross-examination is possible and where the witnesses are not before the court. The plaintiff, however, does not appear to be liable to the defendant for the amount actually due under the contract, and we think that, before the defendant should be enjoined from discontinrhig its service, the plaintiff should give a bond conditioned for the payment of any amount found by the court to be due under the contract. The order below is, therefore, modified by providing that the injunction shall be continued upon the plaintiff filing with the clerk of this court a bond with two sureties to be approved upon justification in the *234 penalty of $10,000, conditioned for the payment of any sum found due by the court, on the trial of this action, to the defendant under the contract alleged in the complaint; that in the event of the failure to give such bond within ten days after service of a copy of this order, the injunction be vacated.”
We think a similar modification should be made in this case, and it will be so ordered and the cause remanded to the circuit court for further proceedings.

Judgment modified.

Crew, Spear, Davis, Shauck and Price, JJ., concur