BERTHA N. STEELE *vs.* THE CLINTON ELECTRIC LIGHT AND POWER COMPANY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

Argued June 4th—decided July 1st, 1937.

*Charles A. Watrous,* with whom was *Lyman H. Steele,* for the appellant (plaintiff).

*J. Birney Tuttle,* for the appellee (defendant).

HINMAN, J.   In October, 1934, the plaintiff purchased a cottage in Madison, which was suitable for summer use only and which remained unoccupied thereafter until May, 1935.   The defendant company has the exclusive privilege of supplying electricity in Madison.   The schedule of rates established by the public utilities commission in effect with respect to the territory in which the plaintiff's cottage is located comprised two plans for residence service, numbered 1 and 2.   Plan No. 1 prescribed a straight meter rate of thirteen cents per K. W. H.   "Minimum charge $1

per month for each month of the year." Plan No. 2 provided a flat charge of $1 per month plus four cents per month per 100 square feet of house area—minimum billing area 1000 square feet—and a graded rate per K. W. H. "Minimum charge. The monthly flat charge for each month of the year. Available for seasonal residence service by the payment of a season charge of $9.00 in addition to the flat charge, with the total season and flat charge for the entire season not more than 12 times the monthly flat charge."

On May 3d, 1935, the plaintiff, by her agent, applied for electrical service for her cottage under Plan No. 1, and on the next day the defendant installed a meter and commenced service. On May 7th the defendant, claiming that Plan No. 1 required payment of a minimum of $1 per month for each month in the calendar year from January to January, billed the plaintiff for the preceding four months and the month of May at the rate of $1 per month. The plaintiff sent a check to the defendant for $1 for May but refused to pay for the preceding months and has continued to do so. On July 26th the defendant presented the plaintiff with a bill for the $4 claimed balance and notified her that service would be discontinued if the bill remained unpaid, and on July 30th it removed its meter and disconnected its electrical service because the plaintiff refused to pay it. On July 31st the plaintiff brought this action claiming an injunction and damages. The finding states, in addition to the foregoing facts deemed material to the present inquiry, that thereafter, in 1935, the defendant furnished electrical service for the use of two tenants of the plaintiff, but at all times after July 30th has refused to furnish it for the plaintiff's use in connection with her cottage.

The only conclusion stated by the trial court, aside from one that the dispute between the plaintiff and

defendant was honest on the part of the plaintiff, is that the court had no jurisdiction to issue an injunction or award damages "because the plaintiff did not first seek relief by means of a petition to the Public Utilities Commission." This conclusion—upon which the judgment appealed from was based—indicates, and the memorandum of decision confirms, that the situation presented on the pleadings and the facts found was deemed by the trial court to be such that the only procedure for relief available to the plaintiff would be by petition to the public utilities commission, under § 3598 of the General Statutes (which is quoted in a footnote), to prescribe the service to be furnished to her and the charges to be made therefor. The finding as to the claims of law made by the plaintiff discloses that she asserted that the procedure provided for in § 3598 is permissive, an additional remedy to aid in the initial securing of service, and neither mandatory nor exclusive; that when an honest dispute arises between a public utility company and a customer over

"Sec. 3598. RATES AND SERVICE AFFECTING A SINGLE PERSON. If any public service company shall unreasonably fail or refuse to furnish adequate service at reasonable rates to any person within the territorial limits within which such company has, by its charter, authority to furnish such service, such person may bring his written petition to the commission alleging such failure or refusal. Thereupon the commission shall fix a time and place for a hearing upon such petition and shall mail notice thereof to the parties in interest at least one week prior to such hearing. Upon such hearing, the commission may, if it shall find that such company has unreasonably failed or refused to furnish such person with adequate service at reasonable rates, prescribe the service to be furnished by such company to such person and the conditions under which, and maximum rates or charges at which, such service shall be furnished. Such company shall thereafter furnish such service to such person in accordance with the conditions so prescribed and shall not thereafter demand or collect any rate or charge for such service in excess of the maximum rate or charge so prescribed. Nothing in this section shall apply to the cases provided for in section 3597, but this section shall be construed so as to include telephone exchange areas."

a charge made to the latter the company cannot lawfully discontinue its service for nonpayment of the disputed charge and if it does a court may compel it, by injunction, to furnish service and may award damages for loss or damage suffered on account of the discontinuance. The assignments of error pertaining to the conclusion and these claims of law are decisive of this appeal.

As a general rule a public utility company engaged in supplying service such as water, gas or electricity to the public may adopt and enforce, as a reasonable regulation for the conduct of its business, a rule that service supplied to a customer may be shut off from one who has defaulted in payment therefor. An obvious reason is that to limit the remedy for collection of compensation for the service to actions at law would be impracticable, as leading to an infinite number of actions to collect very small bills against scattered consumers, many of them mere renters and financially irresponsible. 2 Pond, Public Utilities (4th Ed.) § 668; *Turner* v. *Revere Water Co.*, 171 Mass. 329, 336, 50 N. E. 634, 636; *Mansfield* v. *Humphreys Mfg. Co.*, 82 Ohio St. 216, 92 N. E. 233, 31 L. R. A. (N. S.) 301, and note; *Carter* v. *Suburban Water Co.*, 131 Md. 91, 101 Atl. 771, L. R. A. 1918A, 764; *Shiras* v. *Ewing*, 48 Kan. 170, 29 Pac. 320; *McDaniel* v. *Springfield Waterworks Co.*, 48 Mo. App. 273; *Dodd* v. *Atlanta*, 154 Ga. 33, 113 S. E. 166, 28 A. L. R. 465, and note, p. 472; *McEntee* v. *Kingston Water Co.*, 165 N. Y. 27, 32, 58 N. E. 785.

It is generally held, however, that an exception to this rule is to be observed where there is a bona fide dispute either as to the consumer's liability or as to the correctness of the bill rendered. "While the public utility may refuse to continue to render service until payment is made for that which has been received, it

may not do so unless the correct amount was charged for the service." 2 Pond, Public Utilities (4th Ed.) § 668, p. 1292. The right to discontinue service "cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes . . . when he offers to comply with the reasonable rules of the company as to such supply for the current term." *Poole* v. *Paris Mountain Water Co.*, 81 S. C. 438, 447, 62 S. E. 874; *Schultz* v. *Lakeport* (Cal. App.) 44 Pac. (2d) 683, 685; *Vanderbilt* v. *Hackensack Water Co.*, 113 N. J. Eq. 166, 168, 166 Atl. 298; *Schoening* v. *Paducah Water Co.*, 230 Ky. 453, 457, 19 S. W. (2d) 1073; *Sims* v. *Alabama Water Co.*, 205 Ala. 378, 87 So. 688, 28 A. L. R. 461, and cases annotated, p. 475 et seq.; 27 R. C. L. p. 1454.

It is also well settled that a present or threatened shutting off of service because of nonpayment of an account, where there is a bona fide dispute as to the correctness of the amount thereof or liability therefor, is sufficient ground for equitable relief and injunction to prevent such discontinuance or to compel restoration upon proper conditions—such, for example, as security for payment of what may be ascertained to be due and payment of current correct charges—is an appropriate remedy. *Carter* v. *Suburban Water Co.*, 131 Md. 91, 93, 101 Atl. 771; *McEntee* v. *Kingston Water Co.*, 165 N. Y. 27, 32, 58 N. E. 785; *American Conduit Mfg. Co.* v. *Kensington Water Co.*, 234 Pa. St. 208, 83 Atl. 70; *Mansfield* v. *Humphreys Mfg. Co.*, supra; *Wood* v. *Auburn*, 87 Me. 287, 32 Atl. 906; *Poole* v. *Paris Mountain Water Co.*, supra; and other cases annotated 28 A. L. R. p. 477 et seq. Also, if a public utility company discontinues service for nonpayment of charges the amount of or liability for which is honestly disputed by the consumer, the company in effect

passes judgment on its own case and if it develops that the charges were unjust or erroneous the company is liable to him for such damage as naturally flows from its act. 2 Pond, Public Utilities (4th Ed.) § 668, p. 1292; *Kentucky Utilities Co.* v. *Warren Ellison Cafe,* 231 Ky. 558, 563, 21 S. W. (2d) 976; *Gas-Light Co.* v. *Colliday,* 25 Md. 1, 16; *Sims* v. *Alabama Water Co.,* supra.

We have construed § 3598 of the General Statutes—while "doubtless drafted to meet cases of individual discrimination"—to be broad enough "to meet all manner of conditions of unfair and unreasonable treatment of members of the public in the matter of service and rates where individuals might be prompted to seek relief, whether the grievance was distinctly that of a single individual or one shared by several, similarly situated, but nevertheless, in its essence, personal as to each of the group." *Root* v. *New Britain Gas Light Co.,* 91 Conn. 134, 140, 141, 99 Atl. 559; *Gallaher* v. *Southern New England Telephone Co.,* 99 Conn. 282, 121 Atl. 686. If the complaint of the plaintiff was that the provision in the Plan No. 1 rate for a minimum charge of "$1 per month for each month of the year," was unreasonable as applied to seasonal consumers, resort to the public utilities commission under this section would be appropriate. Such resort might be suited, also, to objection, as unreasonable, to a rule or procedure of the defendant in taking the calendar year as the basis for computing the monthly minimums and refusal to furnish service under that plan, on any other basis, to seasonal customers receiving actual service during only part of such year.

The defendant alleges in paragraph 8 of its second defense that under the rate for service under Plan No. 1, established by the public utilities commission, the minimum charge for any service thereunder is $12

for a calendar year, irrespective of the time during the year when such service is rendered, and the plaintiff in its reply alleges that the "rate" described in that paragraph "is illegal and unreasonable and is not founded upon any decision by the Public Utilities Commission." The record indicates, however, that the actual dispute involved is not as to the reasonableness of the rate established under Plan No. 1 including the minimum charge prescribed or even as to the general application of a calendar year as the basis therefor, but relates to the interpretation applied by the defendant to this plaintiff as permitting a charge for the months preceding her application for and the inception of service to her. Even though procedure to test this interpretation and its application to the situation of the plaintiff might be within the scope of § 3598 of the General Statutes, we find nothing in that statute to indicate that resort to it for that purpose would be an exclusive remedy and the controversy here appears to be an appropriate subject for judicial determination. Also, even were the matter more clearly one to which proceedings under the statute would be best adapted, the plaintiff also would be entitled to seek, in the courts, injunction against deprivation of service pending determination of the disputed question and just damages if the discontinuance be found to have been unwarranted. The fact that a public service commission has jurisdiction to hear and determine disputes over charges for service does not deprive equity of jurisdiction to enjoin the shutting off of service to coerce payment of a disputed bill. *Carter* v. *Suburban Water Co.*, supra; 27 R. C. L. p. 1457. We conclude, therefore, that the trial court was in error in holding that it was without jurisdiction to issue an injunction against deprivation of service or ultimately to award damages if discontinuance be found unjustified and

loss or injury be shown, and we are of the opinion, also, that it is within the province of the court to decide as to the propriety of the charge which is the subject of controversy.

There is error, the judgment is set aside and the case remanded to the Superior Court to be proceeded with in accordance with this opinion.

In this opinion the other judges concurred.