McLin J. Brown, Individually and as Surviving Partner of the Law Firm of Dryer and Brown, Appellees, v. Illinois Iowa Power Company, Appellant.

Gen. No. 9,394.

Heard in this court at the October term, 1943. Opinion filed November 24, 1943. Rehearing denied February 1, 1944.

LE FORGEE, SAMUELS & MILLER, of Decatur, and D. R. KINDER, of Litchfield, for appellant.

HERBERT W. DEY, of Hillsboro, and J. D. WILSON, of Nokomis, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

This is an appeal by defendant from an order granting a temporary injunction.

On August 8, 1942, the plaintiff, individually and as surviving partner of a law firm, filed in the circuit court of Montgomery county a complaint consisting of five counts. Four of the counts were at law and are immaterial to the present issue.

Count five was in equity and was the only count on which the injunction was based. Such count, so far as is material, alleged that at the time of the commencement of the suit defendant was and for several years prior thereto had been a public utility corporation furnishing gas and electric service to plaintiff at three places owned by him or in which he had an interest, namely, his residence, an office building and an apartment building; that plaintiff promptly paid all bills rendered for such service to his home prior to September 1, 1940, and to such other two properties prior to October 1, 1940; that on September 1, 1940, defendant owed plaintiff ''in excess of $10,000'' for legal services rendered, which defendant had refused to pay, and that thereupon plaintiff ''rightfully'' refused to pay any and all bills rendered by defendant for gas and electric service at such three places, and that ''the amount due and owing to the defendant from the plaintiff is still greatly in excess of the amount owed by the plaintiff to the defendant for electricity and gas service''; that defendant had wrongfully threatened to discontinue such service; that defendant had ample current and gas to render such service; that there was no other public utility authorized to render such service; that plaintiff had no means of generating electricity or producing gas, and that if defendant carried out such threats plaintiff would suffer irreparable injury and would have no remedy at law.

Such count prayed that inasmuch as the matter was urgent and did not permit of notice for a preliminary injunction, a temporary order issue enjoining defendant from discontinuing such service until the court should otherwise order, and until an accounting might be had, and that upon a hearing the injunction be made permanent.

On December 21, 1942, plaintiff amended his complaint by adding an allegation that on February 1,

1935, the plaintiff was licensed to practice law. Such amendment also, to use the language of the amendment, "reversed the word 'to' and the word 'from' where they first followed the words" appearing above "at such three places."

On March 3, 1943, plaintiff further amended his complaint by adding the words "at defendant's request" after the words "in excess of $10,000 for legal service rendered."

On March 31, 1943, the plaintiff filed his third amendment alleging that the defendant on March 3, 1943, was and still is insolvent, and therefore unable to pay its common creditors.

Said amendment further alleged that the defendant had charged the plaintiff and rendered to him a bill for electric service at his residence since September 1, 1940, by which it had charged to him 2 per cent of the amount of each and every bill for failure to pay the same within 10 days after the period for which the bill was rendered, and that defendant had rendered to plaintiff a bill for electric and gas service at said two other places so owned by plaintiff, by which it had charged to plaintiff 2 per cent of the amount of each and every bill so rendered for failure to pay the same within 10 days after the period for which the bill was rendered; that the defendant at the time each and every bill was so rendered was indebted to plaintiff in a sum greatly in excess of each and every bill so rendered, including all prior bills rendered, including such 2 per cent, and that the said charges so made by defendant of such additional 2 per cent had given rise to a dispute between the plaintiff and the defendant as to the correct sum, if any, which plaintiff owed defendant for electric and gas service.

On August 8, 1942, on motion of plaintiff, a temporary writ of injunction was issued restraining defendant from discontinuing such service until such time as the court should direct, and until an account-

ing might be had, or until the court should make other order to the contrary.

On September 21, 1942, the defendant filed its motion to dissolve such temporary injunction.

On March 3, 1943, on motion of the plaintiff an order was entered ordering that the order of August 8, 1942, be vacated as to any moneys due from plaintiff to defendant for gas and electric service from and after March 3, 1943, and ordering that such injunction remain in full force and effect as to all charges for gas and electric service furnished by defendant to plaintiff accruing prior to March 3, 1943. Thereupon such order ordered that the motion of the defendant to dissolve the injunction granted and issued on August 8, 1942, be denied.

The defendant has brought this appeal to review the order of the trial court denying defendant's motion to dissolve such temporary injunction.

The three amendments to count five were allowed over the objection of the defendant, and defendant contends that the sufficiency of its motion to dissolve should not be affected by the amendments. We do not consider it necessary to discuss such question for it is our opinion that count five, both as originally filed, and as amended, did not state facts which would justify the issuance of such injunction.

Only three Illinois cases have been called to our attention in which we find discussed the question of the right of a public utility to shut off service because of nonpayment of service charges.

In *Barry v. Commonwealth Edison Co.*, 374 Ill. 473, 476, the court said: "As a general rule a public utility furnishing water, gas or electricity to the public may adopt and enforce as a reasonable regulation that such service to the customer may be shut off from one who has defaulted in payment therefor. (*Steele v. Clinton Light and Power Co.*, 123 Conn. 180, 112 A. L. R. (Anno.) 232.) An exception to this rule, how-

ever, is to be observed where there is a *bona fide* dispute either as to the customer's liability or as to the correctness of the bill rendered. The right to discontinue service cannot be exercised so as to coerce the customer into paying a bill which is unjust or which the customer in good faith, and with show of reason, disputes. Otherwise, the utility, in effect, would pass judgment upon its own case."

In *Hiller v. City of Pinckneyville*, 269 Ill. App. 53, it appears that a physician conducted a hospital, the water supply for which was procured from the city. The physician rendered service to three city employees and made a charge of $25 therefor against the city. The physician refused to pay for water unless the city would credit him with the $25, and for this reason the city thereupon shut off the water. Thereupon the physician obtained a mandatory injunction. A motion of the defendant to dissolve was denied. On appeal the Appellate Court reversed such order of the trial court and in so doing said: "The law is well settled that a city will not be permitted to force the payment of a separate and distinct claim by shutting off the water or to litigate such a claim in a suit for injunction. That being true, appellee cannot litigate in this case the merits of his claim for medical services. If he thinks he has a valid claim he must sue at law."

In *Barrell v. Lake Forest Water Co.*, 191 Ill. App. 269 (Abst.), the court held that a public service corporation may shut off water for nonpayment of a bill if there is no overcharge.

In *Barrett v. Broad River Power Co.*, 146 S. C. 85, 143 S. E. 650, the reasons for the rule are well stated. The court there said: "The denial of the usual power of a public service company to cut off its patron's supply of water or electricity, when there is a *bona fide* dispute as to the amount due for the service furnished, is founded upon the principle that the patron

is not to be penalized, oppressed, or coerced because he asserts his rights as a citizen to dispute, in good faith, a bill of the company. It is not based upon the other idea that the consumer has the right to require a continuance of the service when accounts therefor are not questioned, until there is a settlement of some other account or demand that the consumer may have, or claim to have, against the company, other than one with reference to the service bills. If the latter principle were the foundation of the rule in respect to the mutual rights of the parties as to a continuation of the supply of water and electricity, impecunious and advantage seeking individuals could, by the assertion of almost any kind of demand against a public service company, require it to continue almost indefinitely to supply them with either water or electric current." (See also *Steele v. Clinton Elec. Light & Power Co.*, 123 Conn. 180, 193 Atl. 613, 112 A. L. R. 232.)

The allegation of count five, as amended, that the defendant "on March 3, 1943, was and still is insolvent," is a mere conclusion and states no facts on which the conclusion is based. However, if insolvency were well pleaded, so as to be admitted by the motion to dissolve, no authority is cited indicating that, and we can see no reason why, an insolvent utility corporation, indebted to a particular customer on a charge not connected with a service charge, should, in effect, be required to furnish continued service to such customer although the latter is in default and refuses to pay a *bona fide* claim for service already furnished him.

Obviously the main purpose of the last amendment was to attempt to show that there was a *bona fide* dispute either as to the plaintiff's liability or as to the correctness of the bills rendered by the defendant. By such amendment the plaintiff does not show or even allege that any bill, excluding or including the 2 per cent, was incorrect or unjust. The only allegation as

to any dispute is that the "charges . . . of 2 per cent had given rise to a dispute." The complaint does not state the amount of all or of any unpaid service charges, including or excluding the 2 per cent. While the complaint does not state any facts from which it can be determined what such 2 per cent would amount to, the affidavit of plaintiff, filed in support of his motion for leave to file the last amendment, states that the defendant "owes and is" indebted to plaintiff "more than $7500", and that the "defendant claims that the plaintiff . . . owes the defendant less than $1500 for electric and gas service," and further states that while defendant at all times in question has owed plaintiff sums in excess of such service charges, yet defendant has charged plaintiff an additional 2 per cent of each bill because of failure of plaintiff to pay same within 10 days after rendition, and that this charge of 2 per cent has given rise to a dispute as to the correct sum, if any, which plaintiff owes for such service. From these statements in such affidavit, and from the allegation in the amendment that the "charges . . . of 2 per cent have given rise to a dispute," it would seem to follow that the only disputed charge, if any, is 2 per cent of $1500 which would be $30. The effect of the injunction was to not only restrain the defendant from discontinuing service because of the nonpayment of the 2 per cent item amounting to not more than $30, which is not alleged to be unreasonable or unjust, but also to restrain defendant from discontinuing service because of the nonpayment of *bona fide* undisputed service charges which had accrued over a period of nearly two years immediately preceding the filing of the complaint,— although the complaint made no tender of payment of such undisputed service charges, and although defendant had the right to discontinue service for nonpayment of *bona fide* undisputed service charges.

The three Illinois cases above referred to were decided prior to the adoption of our Civil Practice Act (ch. 110, Ill. Rev. Stat.). Paragraph 1 of section 38 of such act [Jones Ill. Stats. Ann. 104.038, subd. (1)] provides that any demand by one or more defendants against one or more plaintiffs, . . . whether in the nature of setoff, recoupment, cross-bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross-demand in any action, and when so pleaded shall be called a counterclaim. Plaintiff contends that by this section he has the right to anticipate a counterclaim of defendant, and thus have continued service from defendant until a final accounting is had. We see no force to this contention.

For the reasons indicated, it is our opinion that the trial court erred in denying the motion of defendant to dissolve the injunction so issued on August 8, 1942.

The order of the circuit court so entered on March 3, 1943, is therefore reversed, and this cause is ordered remanded to the circuit court with directions to that court to dissolve such injunction, and for further proceedings consistent with this opinion.

*Reversed and remanded with directions.*