**Prentiss T. ROWE, Plaintiff,**

v.

**Calvin CHANDLER, individually, and as Principal of Emporia High School, Defendants.**

**Civ. A. No. KC–3315.**

United States District Court,
D. Kansas.

July 12, 1971.

Michael Lerner, Kansas City, Kan., J. Gregory Walta, Colorado Springs, Colo., for plaintiff.

John G. Atherton, Elvin D. Perkins, Emporia, Kan., for defendants.

## DECISION OF THE COURT

THEIS, District Judge.

In January, 1971, the plaintiff, Prentiss T. Rowe, was a second-semester senior at the College of Emporia. He was pursuing a full course of study, majoring in Political Science and History, with a minor in Secondary Education. The College of Emporia, located at Emporia, Kansas, is a private, liberal arts college with recognized national accreditation. It is also accredited by the Kansas Board of Public Instruction for Teacher Education. Had the plaintiff's educational plans culminated as anticipated, he would now have a degree from the College of Emporia and be state certified to follow his chosen profession of teaching in the secondary schools of the State of Kansas.

It now appears that the plaintiff did not receive his degree as anticipated, nor did he gain certification to teach. These developments are urged as the basis for a claim for relief under the Civil Rights Act of 1871. 42 U.S.C. § 1983. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1343(3). The plaintiff avers that he has been denied due process and equal protection under the Fourteenth Amendment to the Constitution of the United States by the defendants effectively denying him the right to complete his college education in his chosen field. Plaintiff seeks injunctive relief and monetary damages, both compensatory and punitive. The facts, developed in a hearing before this Court to determine the availability of preliminary injunctive relief, are as follows.

As stated above, the plaintiff was a student at the College of Emporia completing his final semester of academic work. He was enrolled in a course entitled "Education 322." This course was a prerequisite for graduation and for state certification as a qualified instructor. It was commonly referred to as "student teaching." On or about January 21, 1971, plaintiff began his student teaching at Emporia High School. On March 2, 1971, the defendant Chandler, Principal of Emporia High School, called the plaintiff to his office and informed him that he had heard numerous rumors concerning plaintiff's behavior and that he was therefore terminating plaintiff's status of student teacher at Emporia High School. Chandler advised the plaintiff to report to his supervising professor, the defendant Valyer, regarding this termination. Chandler also telephoned Valyer relative to the rumors

he had heard regarding plaintiff's conduct in the performance of his student teaching assignment. In essence, plaintiff was accused of conduct toward students which was both morally and professionally unbecoming one entrusted with the educational welfare of students in a public school. If such accusations be true, plaintiff's claim for relief under the Civil Rights Act, or otherwise, would fail. Shortly following this incident on March 2, 1971, several other telephone communications were had between Chandler and Valyer regarding plaintiff's alleged conduct.

The next significant event occurred on March 11, 1971, when plaintiff was advised in writing by the defendant Valyer that Emporia High School would not reinstate plaintiff as a student teacher. He was further advised that he was withdrawn from "Education 322," which carried six semester hours of credit. Four days later, on March 15, 1971, plaintiff was advised by the defendant Hilbert, as Registrar of the College of Emporia, that he did not have enough total hours to graduate as expected. The final correspondence between plaintiff and the defendants came from the defendant Minner, Head of the Education Department of the College of Emporia. This occurred on April 6, 1971, and plaintiff was advised as follows:

"It was moved, seconded, and approved unanimously [by the Teacher Candidate Selection Committee] that Prentiss Rowe not be permitted to complete a minor in Education at the College of Emporia for purposes of graduation."

The other named defendants are members of the Teacher Candidate Selection Committee. At about the same time, the defendant Hilbert also notified plaintiff's Selective Service Board that plaintiff was no longer a full-time student and therefore no longer eligible for a student draft deferment. It appears from the evidence that plaintiff did retain an attorney, that some remonstrances were made and conversations held between plaintiff and counsel and the college authorities, but no hearing was ever accorded to plaintiff.

Plaintiff alleges that the defendants conspired together under color of state law to deprive him of due process and equal protection of law under the Fourteenth Amendment to the Constitution of the United States. Plaintiff seeks monetary damages and equitable relief in the form of temporary and permanent injunctions requiring reinstatement in the Department of Education at the College of Emporia and the granting of credit for Education 322 pending a hearing complying with due process of law under the Fourteenth Amendment to determine the validity of the defendants' actions. In other words, plaintiff asserts that he was denied a constitutionally protected right without due process of law. This Court has recently held that a student at a public institution of higher education cannot be summarily dismissed without a hearing or some other reliable fact finding procedure to determine whether the dismissal is based upon facts warranting dismissal. See Gardenhire v. Chalmers, infra. Plaintiff also pleads diversity jurisdiction and a claim for relief based upon libelous statements made by the defendants to other persons.

A hearing was held on May 10, 1971, to determine whether temporary injunctive relief should be granted to the plaintiff pending a final determination of this cause on its merits.

Counsel for the defendant college and its officials makes two principal contentions from the facts appearing in evidence at the hearing: (1) that the college is privately endowed, is not an instrumentality of the State, and is not amenable to due process requirements under the Civil Rights Act or otherwise; and (2) that the college did extend due process to plaintiff, that he had counsel, and did not request further hearing. The position of the defendant Chandler is that there was no contractual relationship between Emporia High School and the plaintiff, no duty was

owed by him or the high school to plaintiff, and that he was not a party to the acts of damage or aggrievement which plaintiff claims.

■■ An application for preliminary injunctive relief is directed to the sound judicial discretion of this Court under general equity principles. Although the equitable powers of this Court are broad and flexible, there are certain guidelines for determining when this power should be exercised. In the case of Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1969), Judge Hill, speaking for the Court, said:

"In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger." (415 F.2d 437, 439.)

This clearly indicates that the plaintiff has a burden which is twofold. A showing of irreparable injury by itself will not suffice. It must additionally be shown, to a "reasonable probability," that the party seeking relief will ultimately be successful. It is not difficult to understand the potential injury to the plaintiff in the case at bar and this Court readily agrees, but only for the purpose of determining the availability of preliminary injunctive relief, that plaintiff has shown the latter part of the dual requirement explicated by Judge Hill—the "probable danger" of irreparable harm. In addition, it appears that plaintiff was dismissed from the Education Department without the slightest attempt on the part of defendants to determine whether the rumors regarding plaintiff's conduct had any basis in fact.

In determining whether plaintiff has made out a prima facie case showing a "reasonable probability" of ultimate success, it is necessary, to some degree at least, to address the merits of the dispute. The Court has done so and for the reasons stated below, declines to grant plaintiff the relief sought.

The pursuit of formalized educational training beyond high school, once looked upon as a "privilege" available only to a few, is recently taking on a newfound status of "right," available to many. This is surely the result of the sociological and technological advances made by our society during the last several decades which have placed ever increasing educational demands upon our citizens. It was only ten years ago that a court first recognized and held that a student at a state university had the right not to be expelled from that university without the procedural safeguards guaranteed by the Fourteenth Amendment to the Constitution, i. e., that attendance at a state school is a right entitled to the protection of the Fourteenth Amendment. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed. 2d 193 (1961). Since *Dixon,* the federal courts have been uniform in holding that students at public institutions of higher learning do have constitutional rights that the courts will recognize and protect. Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1032 (1969). This Court has recently recognized the right of a student to due process of law in suspension proceedings from a state university. Gardenhire v. Chalmers, 326 F.Supp. 1200 (Theis, J.).

■ There are two essential elements to a cause of action under the Civil Rights Act of 1871. These are (1) that the conduct complained of was by a person acting under color of state statutes or local law, custom or usage, and (2) that while so acting, deprived another of rights, privileges or immunities secured by the Constitution and laws of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Monroe v. Pape,

365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961); Palacios v. Foltz, 441 F.2d 1196 (10th Cir.). It is in this perspective that the Court must determine plaintiff's probability of success, i. e., it must reasonably appear that plaintiff was denied a constitutionally protected right by the defendants acting under color of state or local law.

The threshold issue is whether the defendants acted under color of state law for "it is axiomatic that the due process provisions of the Fourteenth Amendment proscribe state action only and do not reach acts of private persons unless they are acting 'under color of state law.'" Browns v. Mitchell, 409 F. 2d 593, 594 (10th Cir. 1969). The *Browns* case, like the case at bar, involved disciplinary action by a private university against students who subsequently brought an action pursuant to the Civil Rights Act of 1871. To paraphrase then Chief Judge Murrah, who authored the opinion for the Court, it must appear that the State of Kansas has "so insinuated itself" in the affairs of the private college that the state can be "recognized as a joint participant in the challenged" disciplinary proceedings before it can be said that the College of Emporia acted under color of state law. Id. at 595, citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). *Browns* teaches that the most desirable method of determining when a private enterprise acts under color of state law, is an inductive process of examining various indicia to ascertain the nature and extent of state participation in the activity complained of. Browns v. Mitchell, supra, 409 F.2d at 595. See also Wright, The Constitution on the Campus, supra, at 1035; Developments in the Law—Academic Freedom, Harvard L.Rev. 1045, 1056–1064 (1968). In this context, the courts are prone to examine the extent to which the state controls the college financially or by regulation, whether state agents control the management of the school, or whether the school is such a public function as to

be tantamount to a state function. Powe v. Miles, 407 F.2d 73 (2d Cir. 1968); Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N. Y.1968). In *Powe*, a case not unlike the one at bar, Judge Friendly stated that to hold that a private school acts under color of state law:

> "The state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of the complaint." (407 F.2d at 81.)

This Court has carefully considered the arguments advanced by the plaintiff and concludes that the asserted indicia of state participation do not indicate that state action, as opposed to private action, forms the basis of the complaint. The record before the Court does not indicate the amount, if any, of state financial aid received by the College of Emporia. The College was not formed as the result of any action by the State of Kansas, but rather by the Presbyterian Synod of Kansas, as a denominational institution. Also, the physical location of the College is upon property privately given to the Presbyterian Synod of Kansas. It does not appear that the State of Kansas in any way influences the operation or the daily activity of the College of Emporia. As was the case in *Grossner*, supra, the plaintiff has simply failed to show the requisite degree of state action in *any* of the college's activities, let alone the specific proceedings here in question.

The plaintiff advances one argument, and it is just that—argument, without supportive proof, that requires an additional comment. It appears that the College of Emporia is accredited by the Kansas Board of Public Instruction for Teacher Education. No evidence has been offered which would tend to indicate the degree of state action this fact connotes. It probably

means only that the State of Kansas reviews the academic subjects offered by the defendant College and certifies that they are sufficient to qualify one completing the same to teach. It certainly does not appear that the Kansas Board of Public Instruction for Teacher Education in any way participated in any of the acts complained of by the plaintiff; nor does it appear that the Board formulated the procedure, or more accurately, the absolute lack of it, by which plaintiff was summarily dismissed from the Education Department. However, the Court has considered this as a relevant indicium which might tend to show state action on the part of the defendants.

Finally, this Court would feel constrained to note a lack of jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and dismiss that portion of the plaintiff's complaint which purports to be a Civil Rights Act claim relating to defendant College and its officials, but for the possibility that plaintiff may be able to discover additional facts which would expand his thus far inadequate identification of state action with the defendants' conduct.

In view of our disposition of the case on the private college issue, it is unnecessary to consider the college's second contention.

 As to the defendant Calvin Chandler, the Court feels this action, under guise of the Civil Rights Act, must fail for the reason that plaintiff had no contractual relationship with Emporia High School justifying a student teaching tenure or due process of any kind. While a state high school is certainly a state instrumentality, Emporia High School is certainly a state instrumentali-School and defendant Chandler, as its administrative officer, owed no duty whatsoever to the plaintiff and could terminate his presence at the high school for any cause. While it was Chandler's action on the basis of the rumors which precipitated the unfortunate chain of events here, he owed no legal duty upon

which plaintiff can impose liability. At most, Chandler had a duty of decency to see that he was not acting upon false accusations, but his duty to protect the students, their parents, and the school board from potentially abrasive and unpleasant events was a transcendant one, fully justifying his action.

As to all defendants, there appear to be allegations in plaintiff's complaint aside from the attempted invocation of the Civil Rights Act, which, based on diversity of citizenship and jurisdictional amount, may be relied upon by plaintiff as a cause of action for the tort of libel and slander, and which must await clarification before the Court in future proceedings in this case.