**Edward R. BROWNLEY, Plaintiff,**

v.

**GETTYSBURG COLLEGE, a Corporation, et al., Defendants.**

**Civ. A. No. 71–236.**

United States District Court,
M. D. Pennsylvania.

Feb. 14, 1972.

Robert W. Geigley, Gettysburg, Pa., Lewis F. Adler, Harrisburg, Pa., for plaintiff.

Hepford, Zimmerman & Swartz, Harrisburg, Pa., for defendants.

## MEMORANDUM

NEALON, District Judge.

Plaintiff, Edward R. Brownley, an Assistant Professor of Health and

Physical Education at Gettysburg College (Gettysburg), was notified by Gettysburg on June 2, 1970, that 1970–1971 has been established as his terminal year and that he would not be reappointed thereafter. On June 8, 1971, plaintiff filed this suit against Gettysburg and certain officers of the College, in which he contends that he was dismissed without hearing or notice of any lawful reasons for his dismissal. As relief he requests reinstatement to his former position. Jurisdiction is asserted under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343.[1] Defendants have filed a motion to dismiss alleging that (a) the Court lacks jurisdiction because the action is brought under the Civil Rights Act, whereas the alleged actions of Gettysburg have not occurred under "color of state law", and (b) the complaint fails to state a claim upon which relief may be granted because a college may refuse, with or without cause, to reappoint a non-tenured employee after the expiration of his contract. Affidavits have been filed and oral arguments made. The motion is now before the Court for disposition.

■■■ The essential elements of a cause of action under 42 U.S.C. § 1983 are that the conduct complained of: (1) must have been done under color of state law and, (2) must deprive another of rights, privileges, or immunities secured by the Constitution of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Therefore, before this Court has subject matter jurisdiction over this case, it must be shown that the defendants acted under color of state law, for it is fundamental that the Civil Rights Act proscribes state action[2] only and private action, however wrongful, cannot form the basis for relief under § 1983. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); United States v. Price, *supra*; Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■■■ The core concept of "state action" has been frequently discussed by the Supreme Court; however, a precise definition has never been formulated;

" . . . to fashion and apply a precise formula for recognition of state responsibility . . . is an 'impossible task' which 'This Court has never attempted'. . . . . Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 860, 365 U.S. 715, 722.

Thus, in determining the presence of state action in a particular case, the Court has adopted a method of examining the individual facts of each case to determine if

"conduct that is formally 'private' (has) become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966).

In implementing this approach, federal courts dealing with the question of to what extent the proscription of the four-

---

1. Section 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
   42 U.S.C. § 1983.

2. The "under color of . . ." requirement of § 1983 has a meaning identical with that given the term "state action." United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

teenth amendment should be applied to the private campus have examined the individual facts to determine essentially: (a) the extent of state control over the college financially or by regulation, and (b) the extent to which the college exercises governmental or public powers. Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971); Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968); Rowe v. Chandler, 332 F.Supp. 336 (D.Kan.1971); Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968); O'Neil, Private Universities and Public Law, 19 Buff.L.Rev. 166, 169 (1970).

This Court has carefully considered the entire record in this case and concludes that there is nothing, either by affidavit or memorandum, to suggest any substantial degree of .interconnection between the Commonwealth and Gettysburg. The affidavits of defendant, C. A. Hanson, President of Gettysburg reveal that it was incorporated in 1832 as a private college devoted to secondary education at the college level. It is governed by a self-perpetuating board of trustees, none of whom serve by virtue of their public office or connection with the State. With one minor exception, all of the land and buildings used and occupied by Gettysburg are owned by the college. All of the salaries of the faculty and other employees of Gettysburg, along with the day to day operating expenses of Gettysburg, are paid exclusively by the college.

The only financial aid Gettysburg receives from the State is in the form of state scholarships granted to qualified students by the Pennsylvania Higher Education Assistance Agency (PHEAA). During 1971, this amounted to $143,944.00 as compared to an annual operating budget of $5,933,016.00, or less than 3% of the total budget for that year. Gettysburg also received aid during the past year from Federal sources in the form of Economic Opportunity grants of $55,000.00, National Defense Loans to students of $130,249.00, and various research grants amounting to $66,846.00.[3] None of these funds, either state or federal, are monies over which Gettysburg can exercise any administrative discretion. These are earmarked as a direct aid to specified students and Gettysburg simply serves as an agent for the transmission of these funds to its students who have been awarded the grants or loans. Its function in this process is limited to crediting the account of the student to whom the award has been made. However, even if the college could exercise some discretion over these funds received, the amount involved is a long way from being so substantial as to make Gettysburg an instrument of the State for purposes of the Civil Rights Act. See Powe v. Miles, supra, 407 F.2d at 81; Torres v. Puerto Rico Junior College, 298 F.Supp. 458 (D.P.R.1969); Grossner v. Trustees of Columbia University, supra, 287 F.Supp. at 548.

What is even more decisive to the state action issue is the total absence of any indication that the State is involved in the procedure in evaluating a candidate for appointment to tenure. In Powe v. Miles, supra, perhaps the leading case on the subject, Judge Friendly stated that to justify a holding that a private school acts under color of state law, it is not sufficient merely to show that the State is involved with some activity of the institution, but the State must be shown to be involved with the particular activity that allegedly caused the injury. Id. 407 F.2d at 81. See also, Browns v. Mitchell, supra; Rowe v. Chandler, supra; Grossner v. Trustees of Columbia University, supra. In the

3. The relevance of any evidence tending to show participation of the federal government in the affairs of Gettysburg is questionable inasmuch as the Civil Rights Act, 42 U.S.C. § 1983, deals only with the "state" action and does not concern itself with federal action. See Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971); Browns v. Mitchell, supra 409 F.2d at 595; Grossner v. Trustees of Columbia University, supra 287 F.Supp. at 547.

present case, there has been no showing that the State participated in any of the acts complained of by the plaintiff; nor does it appear that the State formulated the procedures, or more accurately, the lack of it, by which plaintiff was dismissed. In fact, as in *Grossner*, plaintiff has shown nothing even approximating the requisite degree of state involvement in *any* of Gettysburg's activities, let alone the specific proceedings in question here. *See* Grossner v. Trustees of Columbia University, *supra;* Powe v. Miles, *supra. Cf.* Coleman v. Wagner College, 429 F.2d 1120 (2d Cir. 1970).

One further point requires an additional comment. It appears that the Pennsylvania State Board of Education has approved Gettysburg's program of public school teacher training under authority of the Public School Code of Pennsylvania. There has been no evidence offered which would tend to indicate the degree of state involvement which this fact would create. However, this factor has been considered recently in Rowe v. Chandler, *supra*, 332 F.Supp. at 340–341, and has been rejected. In *Rowe*, the court commented that the fact that Emporia College was accredited by the Kansas Board of Public Instruction for Teacher Education probably meant " . . . only that the State of Kansas reviews the academic subjects offered by the defendant College and certifies that they are sufficient to qualify one completing the same to teach." Id. at 341. The situation is the same here. In any event, it certainly does not appear that the Board of Education exercises any regular supervision or interference with the daily management and operation of the school. Therefore, I conclude that the evidence taken as a whole does not establish that Gettysburg acts under color of state law for purposes of the Civil Rights Act.

In view of our disposition of the state action issue, it will be unnecessary to consider the merits of plaintiff's contention that he was discharged improperly. Accordingly, defendants' motion will be granted and the complaint dismissed.