Thomas **KADLEC**, James W. **Kadlec**, and Isaac **Grinstead**, Plaintiffs-Appellants,

v.

**ILLINOIS BELL TELEPHONE COMPANY**, Defendant-Appellee.

No. 16901.

United States Court of Appeals Seventh Circuit.

Feb. 25, 1969.

Rehearing Denied April 1, 1969.

Harry R. Booth, Chicago, Ill., for appellants.

Donald H. Sharp, Robert V. R. Dalenberg, Douglas G. Brown, Thomas R. Phillips, Alan N. Baker, Chicago, Ill., for appellee.

Before CASTLE, Chief Judge, HASTINGS, Senior Circuit Judge, and KERNER, Circuit Judge.

HASTINGS, Senior Circuit Judge.

Plaintiffs Thomas Kadlec, James W. Kadlec and Isaac Grinstead appeal from an order of the district court granting defendant Illinois Bell Telephone Company's motion to dismiss plaintiffs' second amended complaint, as amended.

Plaintiffs Thomas and James W. Kadlec are engaged in the business of selling automobile parts, rebuilding parts and providing a towing service. The business is operated at two locations, the largest of which, known as Kankakee Auto Parts, is near the city of Kankakee, Illinois. The other establishment, Skokie Automotive, is located in Niles, Illinois. Plaintiff Grinstead is a night watchman at the Kankakee location and lives in a trailer just outside such property.

Illinois Bell contracted with Thomas Kadlec to provide and install three Call-Pak lines. Pursuant to these agreements, defendant installed Call-Pak service in plaintiff Grinstead's trailer; another line was supplied a small house, presumably Thomas Kadlec's residence, situated on the Kankakee business property; and the third installation was made on the Niles property at the residence of James Kadlec.

Designed for residential use exclusively Call-Pak service provides telephone service at a flat fee instead of at a rate based upon the time-distance-unit cost formula which is customary with business telephone service.

On March 16 and 17, 1967, pursuant to Illinois Bell's regulations [1] and sometime after the installation of these Call-Pak lines, defendant terminated its Call-Pak service to plaintiffs; *other telephone service provided to plaintiffs by defendant was not discontinued.* The "shutoff" of the Call-Pak service obviously

---

[1] Appellant's residential Call-Pak service was discontinued by the defendant pursuant to its tariff which is on file with the Illinois Commerce Commission.

Apparently, defendant terminated the service on the authority of the following regulation contained in the tariff:

"OWNERSHIP AND USE OF THE EQUIPMENT—Equipment, instruments and lines on subscriber's premises, furnished by the Telephone Company, shall be and remain the property of the Telephone Company, whose agents and employees have the right to enter said premises at any reasonable hour for the purpose of installing, inspecting or repairing the instruments and lines or for the purpose of making collections from coin boxes and, upon termination of the service, for the purpose of removing such instruments and lines. Such equipment is not to be used for performing any part of the work of transmitting, delivering or collecting any telephone message where any toll or consideration has been or is to be paid any party other than the Telephone Company, without the written consent of the Telephone Company."

was the result of defendant's determination that plaintiffs had been improperly using this particular service for other than residential purposes.

Plaintiffs' original complaint, as amended, alleged that defendant's action of discontinuing the Call-Pak service violated their constitutional rights. They further contended that the regulations under which defendant terminated this service violate the Federal Constitution. In addition, plaintiffs prayed for restoration of the Call-Pak service and for damages for defendant's allegedly wrongful termination of appellants' service. The district court in a written memorandum opinion dismissed the original amended complaint on the ground that the proper forum for the action was the Illinois Commerce Commission rather than the district court.

Following this dismissal, plaintiffs filed a further amended complaint which asked only for damages on the grounds that defendant's conduct had violated the Civil Rights Act, 42 U.S.C.A. § 1983, and Amendments I, IV, XIV of the Constitution. This amended complaint, together with a subsequent amendment thereto, was dismissed by the district court for failure to state a cause of action. Appeal is taken from the dismissal of this second amended complaint, as amended.

The sole issue pesented is whether defendant's conduct of discontinuing plaintiff's Call-Pak service fell within the purview of the Civil Rights Act, 42 U.S.C.A. § 1983, which provides:

"Every person who, *under color of* any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured and an action at law, suit in equity, or other proper proceedings for redress." [Emphasis supplied.]

or within the conspiracy section of the Act, § 1985.

■ It is well-settled that in order to establish a claim for damages under § 1983 of the Civil Rights Act the conduct complained of must have been engaged in under color of law and such conduct must have infringed upon the rights, privileges or immunities secured to the complaining party by the Constitution or laws of the United States. Haldane v. Chagnon, 9 Cir., 345 F.2d 601, 603 (1968); Duzynski v. Nosal, 7 Cir., 324 F.2d 924, 930 (1963); Jemzura v. Belden, N.D.N.Y., 281 F.Supp. 200, 205–206 (1968).

■ At least one of the two elements essential to maintaining a claim under § 1983 is missing in the instant case. Under the facts of this case, we are of the opinion that defendant telephone company was not acting under the authority or pretense of any Illinois state statute, regulation, custom or usage in discontinuing plaintiffs' Call-Pak service. Thus, the second amended complaint, as amended, was properly dismissed by the district court for failure to state a cause of action under § 1983.

Motivated by purely private economic interests and pursuant to its *own regulations*, Illinois Bell terminated plaintiffs' Call-Pak service. The only apparent state connection with the termination rests in the fact that defendant company filed its regulations with state authorities; the state in no sense benefited from, encouraged, requested or cooperated in this suspension of service.

The mere filing of these regulations with the state neither clothed Illinois Bell with state authority nor did it bring it under the aegis of the state. The § 1983 requirement of conduct taken under color of law "* * * can rarely be satisfied in the case of anyone other than a state official." Jobson v. Henne, 2 Cir., 355 F.2d 129, 133 (1966); Weyandt v. Mason's Stores, Inc., W.D.Pa., 279 F.Supp. 283, 288 (1968). Here, the nexus between the state and defendant's

conduct was not sufficient to maintain an action under § 1983.

We have carefully reviewed the cases cited by plaintiffs in support of their contention that defendant telephone company acted under color of law. These cases are readily distinguishable from the instant case and are not controlling. In all of the cases cited where conduct under color of law was found to be present, there existed greater state involvement or control than is alleged in this case.

The rationale of the Supreme Court of Rhode Island in Taglianetti v. New England Tel. & Tel. Co., 81 R.I. 351, 103 A.2d 67, 71 (1954) is relevant to and in accord with our conclusions reached in the instant appeal. In *Taglianetti,* the court ruled that the acts of a telephone company, taken pursuant to its own regulations, could not be regarded as acts done under color of law simply because the company's regulations had been filed with and approved by an organ of the state. In reaching this conclusion, the court stated:

> "Regulations * * * are prescribed [by the telephone company] * * * solely to govern the use of its telephones by persons with whom it has contracted to provide telephone service and such regulations are in the nature of conditions attached to the right to the continuance of service. Action taken initially [by the company] * * * to impose the penalty therein prescribed for the violation of such conditions is in no sense action by the state. * * * [T]he fact that the regulations are filed with the division of public utilities and are approved by the administrator does not transform them into acts of the state. Such filing and approval are merely incidents of the state's regulatory supervision * * * and are designed to inform the patrons thereof of their

rights and obligations in the use of the service * * *."

The issue of whether there was state action in *Taglianetti* was more sophisticated than in the present case. In *Taglianetti,* defendant telephone company disconnected the telephone there in question at the request of the police; in the case at bar, there is no indication that any branch or agency of the state ordered, requested or even encouraged the discontinuance of plaintiffs' service.[2]

Here there is no showing that defendant telephone company acted under color of law in terminating the service; as a consequence, no action for damages may be maintained under § 1983 of the Civil Rights Act. The district court's dismissal of appellants' second amended complaint, as amended, was proper and should be affirmed.

■■■■ With respect to appellants' allegations under the conspiracy section of the Civil Rights Act, § 1985, we do not find facts sufficient to support such a claim; the pleadings with respect to § 1985 were merely conclusory in nature and therefore were properly dismissed by the district court.

The judgment of the district court is affirmed.

Affirmed.

KERNER, Circuit Judge (concurring in the result).

I agree with my brethren that the mere filing of regulations with a state does not convert private action under such regulations into action under color of state law. Nor would it be sufficient to show color of state law to say that an action was performed by a person who functions under a state license, *e. g.,* barbers, doctors, horseshoers or polygraph operators. Nor is color of state law shown by the fact that a corporation or other group functions by virtue of a

---

2. No opinion is expressed as to whether the results in this case would be altered if the defendant had terminated the appellants' service in cooperation with, at the request of or under the orders of the state.

state charter of incorporation, registration as a foreign corporation or a certificate of doing business under an assumed name. Something more is required; whether it be action in concert with state or local officials, as in United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), and United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), or something such as a business whose operation is so intertwined with the state as to be inseparable from it, as in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) and Meredith v. Allen Cnty. War Mem'l. Hospital Comm'n, 397 F.2d 33 (6th Cir. 1968).

However, I do believe that, under appropriate circumstances, it may be possible to demonstrate that a privately-owned publicly-regulated utility or carrier or similar entity has a sufficient nexus with or dependence on a state as to make some of its actions under color of law. Some of the factors which should be considered are whether 1) the entity is subject to close regulation by a statutorily-created body (such as the Illinois Commerce Commission), 2) the regulations filed with the regulatory body are required to be filed as a condition of the entity's operation, 3) the regulations must be approved by the regulatory body to be effective, 4) the entity is given a total or partial monopoly by the regulatory body, 5) the regulatory body controls the rates charged and/or specific services offered by the entity, 6) the actions of the entity are subject to review by the regulatory body, and 7) the regulation permits the entity to perform acts which it may not otherwise perform without violating state law. There may be other factors to be considered besides those here enumerated. The enumeration here of particular factors means that less than all may be sufficient to show color of law in some cases and that nothing less than all may be required in other cases. Each case will depend on its facts. For example, the Public Utilities

Comm'n of District of Columbia v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), the Court held (343 U.S. at 462, 72 S.Ct. at 820):

We find in the reasoning of the court below a sufficiently close relation between the Federal Government and the radio service to make it necessary for us to consider those Amendments. In finding this relation we do not rely on the mere fact that Capital Transit operates a public utility on the streets of the District of Columbia under authority of Congress. Nor do we rely upon the fact that, by reason of such federal authorization, Capital Transit now enjoys a substantial monopoly of street railway and bus transportation in the District of Columbia. We do, however, recognize that Capital Transit operates its service under the regulatory supervision of the Public Utilities Commission of the District of Columbia which is an agency authorized by Congress. We rely particularly upon the fact that that agency, pursuant to protests against the radio program, ordered an investigation of it and, after formal hearings ordered its investigation dismissed on the ground that the public safety, comfort and convenience were not impaired thereby. 81 P.U.R. (N.S.), at 126. [Note omitted.]

See also cases cited in Burton v. Wilmington Parking Authority, *supra* 365 at 725, n. 2, 81 S.Ct. 856, 6 L.Ed.2d 45 and United States v. Price, *supra* 383 at 794–795, n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267.

In order to prevail against a motion to dismiss for failure to state a cause of action, a complaint which relies on 42 U.S.C. § 1983 must affirmatively show that the acts complained of were done under color of law. The amended complaint before us lacks the specific allegations (as set forth above) which would show this necessary statutory element. Because this complaint fails at the threshold, it is not necessary to decide

the issues relating to the alleged unconsented entry of defendant on plaintiffs' premises or the termination of service without notice and hearing.

For these reasons, I concur in the result reached by the majority.