**Robert J. IHRKE and Mary E. Ihrke, Plaintiffs,**

**v.**

**NORTHERN STATES POWER COM-PANY, a Minnesota corporation, Defendant.**

**No. 3–70–Civ–100.**

United States District Court, D. Minnesota, Third Division.

July 8, 1971.

Roger S. Haydock, St. Paul, Minn., for plaintiffs.

Clay R. Moore, Minneapolis, Minn., for defendant.

MEMORANDUM & ORDER

DEVITT, Chief Judge.

In this action for declaratory and injunctive relief under the Civil Rights

Act, 42 U.S.C.A. § 1983, defendant moves to dismiss on the grounds that the court lacks jurisdiction over the subject matter and that the complaint, as amended, fails to state a claim upon which relief can be granted.

Inasmuch as this is a motion to dismiss, the court must look to the plaintiffs' "well-pleaded facts as the hypothesis for decision." Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951).

The amended complaint alleges that plaintiffs Ihrke have been threatened with discontinuance of gas and electric utility services by defendant Northern States Power without notice or an opportunity for hearing on the matter prior to discontinuance. The reason for the treatened termination is plaintiffs' indebtedness to NSP for past due utility services and for a cash security deposit. NSP's rules and regulations provide that the company may discontinue utility services to a customer for failure to pay past due utility bills. The company's regulations do not require that the customer be afforded a hearing. Plaintiffs contend that they should be afforded a pretermination hearing so as to tender defenses to the charges and that the company's failure to provide such a procedure constitutes a taking of property without due process of law. Plaintiffs also allege that because of their indigency they are unable to pay the bill and then contest its validity and consequently NSP's practice of automatic termination constitutes a violation of equal protection of the law.

The amended complaint further alleges that NSP operates under the express authority of the City of St. Paul in the governmental function of furnishing utility services and in so doing acts as an instrumentality of the City. This authority flows from Ordinances 11761 and 11762 and the specific provisions of the respective ordinances are detailed in the complaint. It is alleged that NSP has the exclusive franchise to furnish utility services to all residents of St. Paul, that NSP may use the streets and other public property in providing this service, and that NSP's rate structure is subject to approval by the City Council. Plaintiffs contend that NSP thus acts under the color of law and is subject to the reach of § 1983 constitutional restraints.

Plaintiffs request the court to declare NSP's regulations governing the discontinuance of utility services unconstitutional and to issue a permanent injunction restraining NSP from discontinuing utility services prior to a fair and impartial hearing.

Defendant's motion is phrased alternatively as a motion to dismiss for lack of jurisdiction or for failure to state a claim upon which relief can be granted. We have expressed a preference and consider it the better approach in cases such as this for the court to assume jurisdiction and adjudge the claimed defects on the grounds that the complaint fails to state a claim upon which relief can be granted. Elders v. Consolidated Freightways, 289 F.Supp. 630 (D.Minn. 1968) ; Campbell v. Glenwood Hills Hospital, 224 F.Supp. 27 (D.Minn.1963).

The sole issue presented is whether NSP's action of discontinuing or threatening to discontinue plaintiffs' utility services falls within the purview of the Civil Rights Act, 42 U.S.C.A. § 1983.

It is well settled that two elements are necessary in order to establish a claim under § 1983. First, the conduct complained of must have been engaged in under color of state law. Private action, however wrongful, cannot form the basis for relief under § 1983. Second, such conduct must have infringed upon the rights, privileges or immunities secured to the complaining party by the Constitution or laws of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624 (7th Cir. 1969); Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1967).

At least one of the two elements essential to maintaining a claim under § 1983 is missing in the instant case. Under the facts of this case, we are of the opinion that defendant utility company was not acting under the authority of pretense of any Minnesota state statute, regulation, custom or usage in discontinuing or threatening to discontinue plaintiffs' gas and electric service.

NSP is a privately owned, financed and managed business corporation. It operated independent of state regulation since the State of Minnesota does not have a regulatory board with statewide jurisdiction over utility companies.

St. Paul Ordinances 11761 and 11762 take the form of conditioned grants of permission to NSP to supply the residents of the City with gas and electricity. Although the ordinances establish some regulatory conditions for NSP's gas and electrical operations, they do not purport to take control of all of NSP's activities or convert the company into an arm of the City of St. Paul. The ordinances leave untouched the general managerial direction of the company's affairs, the *internal* *organization* of the company, the relations between the company and its customers and shareholders, and the questions involved in the production and distribution of electrical power and gas.

In this respect the regulatory scheme of Ordinances 11761 and 11762 is not unlike that imposed upon railroads, motor carriers, water carriers and airlines under a number of federal and state regulatory statutes. This type of business regulation is characterized by some form of restriction upon entry into the business and regulation of rates and practices. But such regulation does not in itself convert the industry so *regulated* into a function of government or an arm of the state.

The most recent case dealing with a regulated utility is Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624, cert. denied, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed. 2d 95 (7th Cir. 1969). Kadlec brought suit under § 1983 for damages claiming that the telephone company had improperly terminated a certain form of telephone service to him in violation of his constitutional rights. The Seventh Circuit sustained the dismissal of the complaint for failure to state a claim for relief on the grounds that the discontinuance had not been done under color of state law. The court stated:

"Motivated by purely private economic interests and pursuant to its *own regulations,* Illinois Bell terminated plaintiffs' Call-Pak service. The only apparent state connection with the termination rests in the fact that defendant company filed its regulations with state authorities; the state in no sense benefited from, encouraged, requested or co-operated in this suspension of service." 407 F.2d at 626.

The court found that:

"The mere filing of these regulations with the state neither clothed Illinois Bell with state authority nor did it bring it under the aegis of the state." 407 F.2d 626.

The court in Kadlec relied upon Taglianetti v. New England Tel. & Tel. Co., 81 R.I. 351, 103 A.2d 67 (1954). In *Taglianetti,* the court ruled that the acts of a telephone company, taken pursuant to its own regulation, could not be regarded as acts done under color of law simply because the company's regulations had been filed with and approved by an organ of the state.

Defendant here is similarly motivated by purely private economic interests and is acting pursuant to its own regulations. Plaintiffs have failed to pay a required deposit and are in arrears in their utility bill. NSP is endeavoring to terminate utility services for that reason. Ordinances 11761 and 11762 are not concerned with this area of company-customer relations and in no way attempt to regulate or enforce the company's actions in this regard. Defendant's action in pursuit of private interests cannot be considered to have been taken under color of law. See Kadlec v. Illi-

nois Bell Telephone Co., supra; Watkins v. Oaklawn Jockey Club, 183 F.2d 440 (8th Cir. 1950); Warren v. Cummings, 303 F.Supp. 803 (D.Colo.1969); Campbell v. Glenwood Hills Hospital, Inc., supra.

All companies and individuals are subject, to a certain extent, to state and municipal rules and regulations. It is not the intent of § 1983, however, to bring all entities within the ambit of the statute's proscription. A line must therefore be drawn regarding what constitutes sufficient state involvement to bring an action within the meaning of "color of law" as used in § 1983.

The cases cited by plaintiffs in support of their contention that defendant utility company acted under color of law have been carefully reviewed. These cases are distinguishable from the instant case and are not controlling. In all of the cases cited where conduct under color of law was found to be present, there existed greater state involvement or control than is shown in this case.

Because plaintiffs' complaint fails at the threshold it is not necessary to decide whether plaintiffs have satisfied the second element required by § 1983 —a showing that the complained of conduct constitutes an infringement of constitutionally secured rights. Nevertheless, plaintiffs' complaint also appears to be defective as to this second element.

A recent line of cases indicates that § 1983 application is limited to circumstances where deprivation of personal liberties is alleged. These cases hold that while property rights and rights of personal liberty are entitled to the procedural protections provided by due process, only the latter can be asserted in federal courts in § 1983 civil rights actions. Tichon v. Harder, 438 F.2d 1396 (2nd Cir. 1971); Weddle v. Director, Patuxent Institution, 436 F.2d 342 (4th Cir. 1970); National Land & Investment Co. v. Specter, 428 F.2d 91 (3rd Cir. 1970); Eisen v. Eastman, 421 F.2d 560 (2nd Cir. 1970); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2nd Cir. 1968). See also Hague v. CIO, 307 U.S.

496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The general tenor of plaintiffs' complaint is that a discontinuance of utility services is a taking of property rights rather than personal rights. The complaint appears to fail to state a § 1983 claim for relief.

Further, if there is a right to a pretermination hearing, and this is questionable, see Siegel v. Minneapolis Gas Co., 271 Minn. 127, 135 N.W.2d 60 (1965), the graduated injunctive process already available to plaintiffs under Minnesota Statutes §§ 585.01–585.04 may provide plaintiffs with satisfactory means for obtaining such a hearing.

There is no showing that defendant utility company acted under color of law in terminating or threatening to terminate services to plaintiffs. It is also doubtful if the requisite showing has been made that constitutional rights protected by § 1983 have been abridged. No action may be maintained under § 1983 of the Civil Rights Act.

Accordingly, defendant's motion for dismissal is granted.