Willie **STANFORD** et al., Plaintiffs,

v.

The **GAS SERVICE COMPANY**, State Corporation Commission of the State of Kansas, Defendants.

**Civ. A. No. W–4783.**

United States District Court, D. Kansas.

July 13, 1972.

---

Michael D. Gragert, Legal Aid Society of Wichita, Lee Woodard, Wichita, Kan., for plaintiffs.

John E. Rees, Wichita, Kan., for defendants.

## ORDER

THEIS, District Judge.

The defendant Gas Service Company (hereinafter referred to as "Company") and defendant State Corporation Commission of the State of Kansas (hereinafter referred to as the "KCC"), have each filed motions to dismiss pursuant to Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A., alleging that plaintiffs have failed to state a claim upon which relief can be granted and, alternatively, that this Court lacks jurisdiction. After hearing extensive oral argument and being fully advised in the matter, the Court makes the following findings and orders.

Plaintiffs commenced this action as a class action proceeding against the defendants alleging that the termination procedures of natural gas service presently employed by them violated procedural due process requirements. Plaintiffs assert this Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) (4), 2201 et seq. The gist of plaintiffs' argument for relief is that a utility company's power to shut off water, lights or fuel is an inordinate amount of power under state law not available to other persons or corporations, and when exercised arbitrarily upon the decision of the Company alone, it amounts to depriving a citizen of a property right without due process of law, and is subject to federal constitutional

restraint under the federal Civil Rights Act. Plaintiffs allege that a pretermination procedure should be established to allow the Company's customers an opportunity to contest utility charges made against them for gas services rendered. No issue of standing is presented since all named plaintiffs contest the validity of respective sums presently owed to the Company. The named plaintiffs have posted bond as security for charges incurred since January 18, 1972, pending final resolution of this matter.

Both defendants contend that plaintiffs are actually attempting to obtain free gas service and that this Court lacks jurisdiction. Defendant KCC contends that it is not a "person" as contemplated by 42 U.S.C. § 1983, and therefore no jurisdiction exists as to it. Further, the KCC contends that plaintiffs have failed to exhaust available administrative remedies. It argues that an adequate procedural remedy is presently available to dissatisfied customers of the Company by presenting either a formal or an informal complaint to the KCC stating the grievance. K.S.A. §§ 66–110, 111. The Company contends that 28 U.S.C. § 1342 precludes this Court from granting injunctive relief to the plaintiffs. Both defendants contend the Company is not acting by or under color of state law and that no deprivation of a constitutionally protected right is alleged by plaintiffs.

There are two essential elements to a cause of action under 42 U.S.C. § 1983. In Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969), the United States Supreme Court stated:

> "The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'

This second element requires that the plaintiff show that the defendant acted 'under color of law.'"

See also Rowe v. Chandler, 332 F.Supp. 336, 339 (D.Kan.1971).

The relief plaintiffs seek in the present action is for this Court to require the defendants to establish procedural due process requirements and safeguards in the form of pretermination proceedings. The procedural safeguards needed and required by the Courts to insure due process of law have not always been explicitly enumerated in the United States Constitution. Neither have all the "rights" or "entitlements" requiring due process protections been specifically stated. McGautha v. California, 402 U.S. 183, 255, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1970) (Brennan, J. dissenting). The doctrine of entitlements has been developed by the United States Supreme Court to protect interests variously denominated as "statutory entitlements" or "important interests." Fuentes et al. v. Shevin et al., 404 U.S. 817, 92 S.Ct. 115, 30 L.Ed.2d 46 (1972). In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1970), the United States Supreme Court held that procedural due process requires the states to grant a hearing before merely suspending an individual's "important interests," i. e., his driver's license. The examples of entitlements cited by the Court in *Bell* might indicate that direct state involvement is necessary before the entitlement theory can be applied. Id. at 539, 91 S.Ct. 1586. See also Goldberg v. Kelly, 397 U.S. 254, 262–265, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). Although cursory examination might indicate that no direct involvement is present in the case at bar, evaluation of the plaintiffs' interests tends to show that a constitutionally protected "entitlement" is indeed involved.

In both the *Bell* and *Goldberg* cases the United States Supreme Court carefully weighed the interests involved. The issue is thus presented as to whether or not plaintiffs have a constitutionally protected right or entitlement to gas service. It is not open to question that

food, clothing and shelter are considered necessary to sustain life. However, unheated shelter affects life itself. In Palmer et al. v. Columbia Gas Co. of Ohio, Inc., 342 F.Supp. 241, at page 244, (N.D.Ohio, 1972), the trial court stated:

"The lack of heat in the winter time has very serious effects upon the physical health of human beings, and can easily be fatal. A sudden withdrawal of heating fuel can also result in severe damage to property, both real and personal.

"The evidence leaves no doubt whatever that the consequences of shutting off gas service inflicts hardships upon the consumer that far transcend the loss of driving privileges, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), delay in paying unemployment compensation, California Dept. of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), or even the denial of direct relief payments, Goldberg v. Kelly, 397 U.S. [254] 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). A person can freeze to death or die of pneumonia much more quickly than he can starve to death.

"Thus there is no question of the entitlement involved."

Plaintiffs cited Davis v. Weir, 328 F. Supp. 317 (N.D.Ga.1971) in their brief as support for the entitlement theory. In that case the Water Works shut off the plaintiff's water for his alleged failure to pay the monthly water bill. Although the evidence developed that his landlord was primarily responsible for payment of the water bill and the Court held that the water service must be restored since the plaintiff was not notified of the pending discontinuance of service, the Court also recognized that "water is an absolute necessity of life," and stated:

"In operating as a public service, and an apparent monopoly, the City necessarily is obligated to furnish water to all members of the municipality upon application subject only to the reasonable, nondiscriminatory rules and regulations of the Department of Water Works. The Court believes the fact that the City has undertaken to provide water to all members of the municipality upon application (which it has a duty to do) renders the important benefit bestowed by the City sufficiently analogous to an 'entitlement' to satisfy any requirement along this line in the recent Supreme Court decisions. Goldberg v. Kelly, supra; Bell v. Burson, supra. Furthermore, the Court does not believe that lack of 'privity' is determinative. The crucial factor in the instant case is that the effect of the collection procedure is to terminate an important benefit provided by a governmental agency (albeit at cost to the customer) without notice to the person who is the actual recipient of that benefit and who is the person who will suffer a serious loss without that benefit. This result is unacceptable under Goldberg v. Kelly, Bell v. Burson, and the due process clause of the Fourteenth Amendment. The City cannot terminate water service without notice to the actual user of the service—in this case, the plaintiff." (pp. 321–322).

Although the Davis case might arguably stand for the proposition that it should be limited to uses dealing with notice requirements under due process by municipally controlled and operated utilities, the Davis case indicates that the entitlement theory can be made applicable to the necessities of life, i. e., water.

In the Declaration of Independence of July 4, 1776, the Congress declared, in part:

"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness."

The Preamble of the United States Constitution states that this great document proclaiming the very touchstones of democracy was enacted to promote, among other things, "the general welfare" of

the people. Nothing is more basic to the American system of values, indeed mankind, than the continued existence of life itself. Protection of rights and entitlements affecting this basic principle is the responsibility of the judiciary operating within the framework established by the legislature. In sum, therefore, whatever the classification of utility services, be they rights, privileges, or entitlements, such life-sustaining services would seem to fall within the same constitutional protections afforded welfare benefits, wages, drivers' licenses, reputation in the community, and possession of personal property, all as has been previously decided by the United States Supreme Court. See Goldberg v. Kelly, supra; Sniadich v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, supra; Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Fuentes et al. v. Shevin et al., supra. Accordingly, this Court determines, under conceptual facts and circumstances, that failure to establish effective pretermination procedural safeguards with reference to contested gas service billings might well be a violation of plaintiffs' constitutionally protected entitlements under the broad allegations made in the existing complaint.

■ The second element to be considered is whether or not the defendants acted by or under color of state law. 42 U.S.C. § 1983; Adickes v. S. H. Kress & Co., supra. The defendants cited various cases in support of their contention that this requirement is lacking in the case at bar. E. G., Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624 (7th Cir. 1969); Ihrke v. Northern States Power Co., 328 F.Supp. 404 (D.Minn.1971); Lucas v. Wisconsin Electric Power Co., 322 F.Supp. 337 (E.D.Wis.1970). The Court determines that the foregoing cases are inapplicable to the case at bar and that the defendant Company was acting by or under color of state law. On the other hand, the *Ihrke* case, relied on so strongly by Gas Service Company, has been reversed by the Eighth Circuit Court of Appeals in an opinion handed down on May 3, 1972, in which it held that a gas company was a public utility enjoying a monopoly under state law and municipal franchises, and as such acted under "color of state law" within contemplation of the federal Civil Rights Act, when it terminated gas service to customers.

The Kansas Legislature has vested extremely broad powers in the Kansas Corporation Commission and, therefore, even though privately financed, the utility actually exists and operates by or under color of state law. K.S.A. § 66–101 provides as follows:

> "*Power, authority and jurisdiction.* The state corporation commission is given full power, authority and jurisdiction to supervise and control the *public utilities,* including radio common carriers, and all common carriers, as hereinafter defined, doing business in the state of Kansas, *and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction.*" (Emphasis added)

The Company could not operate or transact any business as a public utility without KCC authorization. K.S.A. § 66–131. The Kansas Legislature has further stated that all provisions of the pertinent act are to be liberally construed in favor of broad power and authority on the part of the KCC. K.S.A. § 66–141. See also Cities Service Gas Co. v. State Corporation Commission, 201 Kan. 223, 440 P.2d 660 (1968). Broad enforcement powers are granted to the KCC to compel all regulated bodies to comply with the Act and KCC orders. K.S.A. §§ 66–138, 140. In Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), the United States Supreme Court stated:

> "What is 'private' action and what is 'state' action is not always easy to determine. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed. 45. Conduct that is formally 'private' may become so entwined with governmental policies or

so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action. . . . "

The defendant Company is an included public utility in this extremely broad grant of authority and due to such extreme regulation, has tended to lose its "private character." It and a very few other corporations or business enterprises in privately owned public utility businesses, do in fact enjoy a complete monopoly of supplying an essential commodity to the citizens of this and other states whose rates, method of and right to do business are solely under state control. Such public utilities, beyond question, perform public functions in the public interest under public regulation. As such, they are subject to constitutional restraint. Accordingly, the Court holds that the defendant Company was acting by or under color of state law for purposes of this proceeding.

The defendant KCC's motion to dismiss shall be sustained. There is no indication that the KCC is an indispensable party to the action at bar. The plaintiffs contend that the KCC can be sued under § 1983 in "equitable actions for injunctive relief against invasions of a plaintiff's federal constitutional rights by municipal action." Although Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037, 1038 (10th Cir. 1970), supports this position, plaintiffs are requesting this Court to require the Company to *establish* a procedural practice, not prevent an invasion of a federal constitutional right. In any event, the KCC might well be interested in various aspects of this proceeding and may well desire to re-enter the action as *amicus curiae*, since resolution of the issues herein for either party will have definite influence on their future decisions concerning proposed utility tariffs in the public interest.

Plaintiffs have commenced this proceeding as a class action pursuant to Rule 23, F.R.Civ.P., 28 U.S.C. The Court determines this action is maintainable as a class action in that the class as now constituted is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. The Court additionally determines that the requirements of Rule 23(b) (1) (B) are also met.

It is therefore ordered that the defendant State Corporation Commission of the State of Kansas' motion to dismiss be, and the same is hereby, granted.

It is further ordered that the motion to dismiss of the defendant Gas Service Company be, and the same is hereby, denied.

It is further ordered that plaintiff be permitted to proceed herein pursuant to Rule 23(a), (b) (1) (B), F.R.Civ.P., 28 U.S.C.