David L. **SALISBURY**

v.

The **SOUTHERN NEW ENGLAND TELE-PHONE CO.** and **Wiliam J. O'Keefe.**

**Civ. No. 15770.**

United States District Court,
D. Connecticut.

Nov. 7, 1973.

David L. Salisbury, pro se.

Peter J. Tyrrell, Griffin & Brayton, Waterbury, Conn., for defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

ZAMPANO, District Judge.

The plaintiff instituted this action pursuant to the provisions of the Civil Rights Act for declaratory relief and damages, alleging that he was denied the protections of procedural due process when the defendant public utility company discontinued his telephone service without notice or cause. The only issue posed by the defendants' motion to dismiss is whether termination of the service constitutes "state action."[1]

Reciting various civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986,

---

1. Since the defendants do not raise the issue whether the deprivation of telephone service is a cognizable right within the due process clause, the Court assumes they concede the point. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

the plaintiff's five-count complaint, filed *pro se*, is a rather lengthy, verbose document. In essence, however, it asserts that the defendant telephone company and its employees disconnected the plaintiff's service without cause, notice or hearing under color of state law, resulting in great inconvenience, embarrassment and expense to the plaintiff and his family. Among other allegations, the plaintiff in his complaint and moving papers, recognizing the need to demonstrate a sufficient nexus between the State of Connecticut and the company, sets forth many factual and statutory references to sustain his position that the public utility is "so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966).

The defendant company, on the other hand, contends that it is a privately owned, financed and operated company, that the Public Utilities Commission of the State of Connecticut "does not interfere, control or govern [the company's] daily business operation or operations of the corporation with the consumer", that the action of the company in terminating the plaintiff's service was taken pursuant to its own rules without utilizing any state statute or regulation and without any specific direction or authorization of a state regulatory body, that the "color of state law" test has not been satisfied and, therefore, the case should be dismissed.

Research of litigation under § 1983 between a public utility company and its customer based on the termination of service reveals differing results. This is inevitable because no Supreme Court case sets out a precise definition of state action. As stated by Justice Rehnquist in Moose Lodge 107 v. Irvis, 407 U.S. 163, at 172, 92 S.Ct. 1965, at 1971, 32 L.Ed.2d 627 (1972):

> While the principle is easily stated, the question of whether particular discriminatory conduct is private, on the one hand, or amounts to "State action," on the other hand, frequently admits of no easy answer. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."

See also Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

Some courts have ruled that the plaintiff has a viable cause of action under the due process clause for the discontinuance of a utility service. See, e.g., Palmer v. Columbia Gas Company of Ohio, Inc., 479 F.2d 153 (6 Cir. 1973) (nonpayment of bills); Ihrke v. Northern States Power Company, 459 F.2d 566 (8 Cir.), vacated as moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972) (nonpayment of bills); Bronson v. Consolidated Edison Co., 350 F.Supp. 443 (S.D.N.Y. 1972) (nonpayment of bills); Hattell v. Public Service Company, 350 F.Supp. 240 (D.Colo.1972) (nonpayment of bills); Stanford v. Gas Service Company, 346 F.Supp. 717 (D.Kan.1972) (nonpayment of bills).

On the other hand, other courts have held that the protections of the Fourteenth Amendment do not apply to terminations of utility services or to other practices of public utility companies. See, e.g., Jackson v. Metropolitan Edison Company, 483 F.2d 754 (3 Cir. 1973) (nonpayment of bills); Lucas v. Wisconsin Electric Power Company, 466 F. 2d 638 (7 Cir. 1972) (en banc), cert. denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L. Ed.2d 696 (1973) (nonpayment of bills); Particular Cleaners, Inc. v. Commonwealth Edison Co., 457 F.2d 189 (7 Cir.), cert. denied, 409 U.S. 890, 93 S.Ct. 107, 34 L.Ed.2d 148 (1972) (requirement of security deposits); Kadlec v. Illinois Bell Tel. Co., 407 F.2d 624 (7 Cir.), cert. denied, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed. 2d 95 (1969) (misuse of telephone service).

■ Reliance upon precedents, however, cannot be dispositive because, as stated in Palmer v. Columbia Gas of

Ohio, Inc., supra, 479 F.2d at 162, "the significance of the involvement of the state in the actions of any kind of private conduct can only be determined by an examination of the facts of each particular case . . . ." See also the catalogue of factors deemed relevant by Judge Kerner in Kadlec v. Illinois Bell Tel. Co., supra, 407 F.2d at 628 (concurring opinion). Thus, the Court must sift the facts and circumstances of each case in order to decide whether the extent of the state's involvement or control in the operations and management of the public utility is such that the private firm becomes subject to the constitutional limitations placed upon state action. Burton v. Wilmington Parking Auth., 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). See generally Note, Fourteenth Amendment Due Process In Terminations Of Utility Services For Nonpayment, 86 Harv.L.Rev. 1477, 1485–1494 (1973).

Accepting the plaintiff's allegations in his complaint as true, as is required, California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and based upon the Court's own research, it seems clear that the defendant telephone company is comprehensively regulated and controlled in almost every aspect of its activities by the Public Utilities Commission of the State of Connecticut. A perusal of Title 16 of the Connecticut General Statutes, and the regulations promulgated thereunder by the Public Utilities Commission, discloses a pervasive statutory and regulatory scheme which affects the daily business life of all public utilities in this State.

The P.U.C. has general supervision over all utility companies in Connecticut, and, among other things, has the power to examine safety conditions, Conn.Gen. Stat. § 16–11, investigate accidents, § 16–14, restrict use of streets, poles and wires, § 16–18, rule on rates, § 16–19, require annual reports, § 16–27, provide penalties for failure to comply with its regulations, § 16–41, and regulate mergers, sales, leases, borrowing, lending, and all "managerial service contracts", § 16–43. Two additional statutes are significant in the light of the facts of this case. Section 16–20 permits any person aggrieved by the failure of a public utility to furnish service to appeal for relief to the P.U.C., and its decision is binding upon the company. However, resort to the statutory remedy is not mandatory, and a customer may seek judicial intervention "to enjoin the shutting off of service to coerce payment of a disputed bill." Steele v. Clinton Electric Light & Power Co., 123 Conn. 180, 187, 193 A. 613, 616 (1937). Section 16–49 provides for a revenue and expense sharing plan whereby 56% of the expenses of the P.U.C. each year are apportioned and assessed among all public service companies. Thus, the State is a direct beneficiary of a portion of all monies received by the utility company from its customers.

Under these circumstances and at this stage of the proceedings, it seems clear that the operations of the defendant company are fully circumscribed and supervised by the State of Connecticut and its regulatory agency, including in general the specific activity complained of in the present lawsuit. There has been a sufficient showing that the defendant utility company acted under color of state law in terminating plaintiff's telephone service without notice or just cause.

Accordingly, the defendants' motion to dismiss is denied.